MABEL BYERLY *et al.*, Plaintiffs-Appellants, *v.* BOARD OF EDUCATION OF SPRINGFIELD SCHOOL DISTRICT NO. 186 OF SANGAMON COUNTY, Defendant-Appellee.

Fourth District No. 14927

Opinion filed November 3, 1978.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellants.

Billington & Billington, of Springfield, for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

The plaintiffs appeal an order holding that the defendant, Board of Education of Springfield School District No. 186 of Sangamon County, Illinois (hereinafter referred to as Board), lacked authority to make severance or retirement payments to teacher employees. The sole issue presented for review is whether local school boards have the authority to

make payments to retiring teachers for unused accumulated sick leave days.

The plaintiffs were all teachers employed by the Board during the 1975-1976 school term. During the 1975-1976 school term, a professional negotiation agreement existed between the Springfield Education Association and the Board. That agreement provided in part that upon termination of services, while in good standing, any teacher with 15 years of service in the Springfield public schools could, upon written request, be reimbursed for one-half of the unused, accumulated sick leave days at the current single daily substitute rate. Each of the plaintiffs terminated her employment with the school district at the end of the 1975-1976 school year. At that time, each of the plaintiffs was a teacher in good standing with more than 15 years of service in the district.

Each of the plaintiffs had a number of unused accumulated sick leave days at the time of retirement. Several of the plaintiffs applied a portion of their unused accumulated sick leave days toward additional service credit pursuant to section 16—127(13) of the Illinois Pension Code (Ill. Rev. Stat. 1975, ch. 108½, par. 16—127(13)). Each of the plaintiffs filed a written request with the Board to be reimbursed for up to one-half of her unused accumulated sick leave days in accordance with the professional negotiation agreement. Plaintiffs' requests were denied by the Board.

Plaintiffs subsequently filed a complaint and an amended complaint to enforce the provision in the professional negotiation agreement concerning severance payments. Following a hearing, the circuit court of Sangamon County entered an order holding that the Board lacked authority to make such severance payments to teacher employees based upon accumulated sick leave.

■■ ■ Plaintiffs essentially contend that the Board has both express and implied power under the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 1—1 *et seq.*) and under the Board's special charter to make payments to retiring teachers for unused accumulated sick leave days. It is clear that a board of education has all those powers which are expressly conferred or which are necessary to carry into effect those powers specifically granted by the legislature. It is well settled that a local school board has discretionary control over the salaries of its teachers, subject only to any limits expressly determined by the School Code and to constitutional prohibitions against actions that are arbitrary, discriminatory, and unreasonable. *Richards v. Board of Education* (1960), 21 Ill. 2d 104, 109, 171 N.E.2d 37; *Hardway v. Board of Education* (1971), 1 Ill. App. 3d 298, 301, 274 N.E.2d 213.

Section 10—20.7 of the School Code gives a school board the authority "[t]o appoint all teachers and fix the amount of their salaries, subject to limitations set forth in this Act." (Ill. Rev. Stat. 1975, ch. 122, par. 10—

20.7.) The same power to fix the amount of teacher salaries is granted to a school board under section 24—1 of the School Code. Section 24—6 of the School Code requires a local board to grant to teachers not less than 10 sick leave days per year and provides that unused days may accumulate to a minimum available leave of 90 days at full pay. There is no specific reference in section 24—6 permitting or prohibiting payment for unused accumulated sick leave days upon retirement.

The Board also has those powers granted to it by its special charter pursuant to section 32—4.9 of the School Code. Section 7 (Fifth) of the Board's special charter gives the Board the authority "[t]o fix the amount of compensation to be allowed to teachers." Section 7 (Ninth) of the charter provides that the Board may do all things necessary for the proper management of the schools.

Our research discloses no Illinois decisions concerning this issue. Plaintiffs maintain that courts from at least six other jurisdictions have considered this same or similar issue and have held that the local board of education had the authority to make retirement payments. (See *Bettendorf Education Association v. Bettendorf Community School District* (Iowa 1978), 262 N.W.2d 550; *Fitchburg Teachers Association v. School Committee* (1971), 360 Mass. 105, 271 N.E.2d 646; *Maywood Education Association, Inc. v. Maywood Board of Education* (1974), 131 N.J. Super. 551, 330 A.2d 636; *Teachers' Association v. Board of Education* (1970), 34 App. Div. 2d 351, 312 N.Y.S.2d 252; *Pennsylvania State Education Association v. Baldwin Whitehall School District* (1977), ___ Pa. Commw. Ct. ___, 372 A.2d 960; *Providence Teachers' Union Local 958 v. School Committee* (1971), 108 R.I. 444, 276 A.2d 762.) We are aware that some of the jurisdictions cited by the plaintiffs involve differing statutory schemes and statutory construction than exist in the present case. Nevertheless, in *Bettendorf*, the Iowa Supreme Court noted that the only powers of an Iowa school district are those expressly granted or necessarily implied in governing statutes. The court held that the defendant board had the authority to contract with teachers regarding compensation and that this authority included the power to make retirement payments based upon the number of days of unused accumulated sick leave.

■ The Board contends in the instant case that the General Assembly has delegated exclusive authority for retirement compensation to the Teachers' Retirement System of the State of Illinois. Section 16—101 of the Illinois Pension Code provides that the Teachers' Retirement System was created "* * * for the purpose of providing retirement allowances and other benefits for teachers, annuitants and beneficiaries." (Ill. Rev. Stat. 1975, ch. 108½, par. 16—101.) Further, section 16—127(13) of the Illinois Pension Code provides a method for converting unused

accumulated sick leave days into a maximum of one-half year of service credit which in turn increases the amount of pension payments under the Teachers' Retirement System. Consequently, argues the Board, these provisions of the Illinois Pension Code preclude local school boards from providing additional forms of retirement compensation, particularly any based on unused accumulated sick leave. We do not agree. Nothing in the language of the Illinois Pension Code prohibits a local school district from augmenting those benefits provided by the Teachers' Retirement System. In the instant case, each of the plaintiffs requested payment from the Board only for accumulated sick leave days which had not been applied toward service credit in the Teachers' Retirement System. There has been no double compensation for the same accumulated sick leave days as the Board has suggested.

■ We conclude that the provisions of the School Code authorizing school boards to employ teachers and to fix salaries are sufficiently broad to include the power to make payments to retiring teachers for accumulated sick leave. The responsibility for the successful operation of a school system requires that members of the school board keep abreast of the changing societal patterns of our times. Competing in the marketplace for competent teaching personnel requires ingenuity and foresight. It cannot be denied that the agreement provision in the instant case has desirable aspects for both of the contracting parties. It serves as an inducement to teachers to remain on the job instead of using sick leave days for less than substantial ailments. This, in turn, promotes continuity in the classroom as the need and use of substitute teachers is reduced. Finally, such a system rewards teachers who are conscientious. These results cannot be faulted.

Accordingly, the judgment of the circuit court of Sangamon County is reversed.

Reversed.

GREEN, P. J., and MILLS, J., concur.