CHARLES LAWRENCE, Plaintiff-Appellee, v. THE BOARD OF EDUCATION OF SCHOOL DISTRICT 189, Defendant-Appellant.

Fifth District No. 5—85—0548

Opinion filed February 5, 1987.

Edward L. Welch, of Edwardsville, for appellant.

William A. Mueller, of Law Offices of Charles J. Kolker, of Belleville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

This case involves a claim by the plaintiff-appellee, Charles Lawrence, a retired attendance officer, that the defendant-appellant, board of education of School District No. 189 (board), wrongfully denied him payment of accumulated sick leave at the time of his retirement from the defendant on March 1, 1979. The circuit court of St. Clair County concluded that plaintiff was entitled to such compensation and entered judgment accordingly.

On appeal, defendant contends (1) that the trial court's factual holding that the plaintiff had exhausted his requirements pursuant to the grievance arbitration procedure is contrary to the manifest weight

of the evidence; (2) that the trial court erroneously held that the plaintiff was equitably entitled to compensation for the sick-leave days accumulated prior to the deletion of such provisions from the collective-bargaining agreement; and (3) that insufficient evidence was presented by plaintiff to support a finding that at all times prior to August 30, 1976, attendance officers could receive compensation for accumulated sick-leave days upon retirement to the same extent as a teacher.

The essential facts in this case are substantially undisputed by the parties. The evidence available to the trial court was presented in the form of testimony, a joint stipulation of facts, and copies of certain collective-bargaining agreements.

Plaintiff, Charles Lawrence, was hired by the defendant board in the capacity of an attendance officer in September of 1959 and worked full time in that capacity until his retirement on March 1, 1979. On the date of his retirement, plaintiff was 65 years of age and had worked for the defendant for nearly 20 years. His duties as an attendance officer involved reporting to school authorities which children were absent from school and the reasons for their absence. In addition to his full-time job as an attendance officer for the defendant, plaintiff worked a full-time job as a utility man for McDonnell-Douglas Corporation.

It was stipulated by the parties that during the period from September 1959 to March 1979, the East St. Louis Federation of Teachers, Local 1220 of the American Federation of Teachers, AFL-CIO (hereinafter local 1220), was the duly elected bargaining agent for the teachers and attendance officers of District 189. As bargaining agent, local 1220 negotiated collective-bargaining agreements between the defendant board and the faculty members and attendance officers. Plaintiff was not a member of local 1220 but was generally aware from other attendance officers that local 1220 was negotiating benefits for them.

The collective-bargaining agreements negotiated by local 1220 contained provisions concerning sick leave and the accumulation of sick-leave days. These agreements allowed an attendance officer 10 sick-leave days per year and allowed such employees to accumulate their sick-leave days to the same amount as a teacher. Under these provisions, a teacher could accumulate his sick-leave days and receive a specified percentage of those accumulated sick-leave days as severance pay upon retirement. In order to qualify for this severance pay it was necessary for the teacher to meet certain conditions. The eligibility requirements for a teacher, as stipulated by the parties, were that

the teacher either have 20 years of service with District 189 and be entitled to receive Illinois Teacher Retirement Benefits or have 15 years of service with District 189 and be 65 years old as of retirement. In addition to this service requirement, the teacher was required to notify the school district in writing one year prior to the date of retirement. If these conditions were met, the teacher would receive 75% of his accumulated sick-leave days up to a maximum of 180 days. Under these provisions of the collective-bargaining agreements between the defendant board and local 1220, an attendance officer could not only accumulate his sick-leave days to the same amount as the teacher, he could also use these accumulated sick-leave days to the same extent and purpose as a teacher. The provisions concerning the payment of accumulated sick-leave days as severance pay upon retirement remained in effect and substantially unchanged for attendance officers until August 30, 1976. At this time these provisions were deleted from the employment agreement.

Shortly after plaintiff began working in his capacity as an attendance officer, he became aware of the fact that he would be able to accumulate sick-leave days and be compensated for them upon retirement. When plaintiff became aware of this fact, it became his intent to accumulate sick-leave days during his employment so that he would be able to use this additional compensation for the education of his youngest children. As a result of this decision, the plaintiff used only a small percentage of his possible sick-leave days despite the fact that he could have stayed home many times because of illness. Plaintiff accordingly accumulated a large number of sick-leave days to the extent that he had 150 days on the date of the contract modification on August 30, 1976, and 161 days upon his retirement. Even after the modification of the collective-bargaining agreement which eliminated the provision allowing attendance officers to accumulate sick-leave days and receive them as severance pay, plaintiff continued his practice of accumulating sick-leave days because he was not notified or otherwise made aware of the fact that the provision had been deleted from the contract.

In early 1978, plaintiff contacted the personnel director of District 189, Hyriam Williams. It was plaintiff's intention at that time to retire in early March of 1979 as he would reach age 65 as of February, 1979. During his conversation with Mr. Williams, plaintiff was informed that he would receive 75% of his accumulated sick-leave days as severance pay upon retirement, provided that he notified District 189 by letter. Mr. Williams informed plaintiff as to when to file the letter and described the necessary contents. During his conversation

with plaintiff, Mr. Williams made no mention of the change in the contract provisions. After speaking with Mr. Williams and sending the letter as he was instructed, plaintiff continued to work and some months prior to his retirement contacted his supervisor, Dr. Crowe, concerning his retirement. He was advised of the number of his accumulated sick-leave days by Dr. Crowe's secretary. In addition, Dr. Crowe, or someone from his office, informed plaintiff that he would be receiving his accumulated sick-leave as severance pay upon retirement.

In addition to making his arrangements for retirement from District 189, plaintiff also arranged to have his retirement from McDonnell-Douglas commence on March 1, 1979. Plaintiff also contacted the Social Security Administration to arrange for his retirement benefits as of that date. Plaintiff testified at trial that once these arrangements had been made it would have been impossible to change them and that he could not have continued working at District 189 and received his other retirement benefits. Two days prior to this retirement, plaintiff contacted Mr. Williams for a final conference concerning his retirement as he had been instructed earlier by Mr. Williams. At that time Mr. Williams informed plaintiff that it would be necessary for plaintiff to speak with the principal, Mr. Ducksworth, concerning his sick-leave days. Plaintiff immediately went to see Mr. Ducksworth and was informed that he would not be receiving his severance pay. There was no reason given for this decision nor was there any mention made of the collective-bargaining agreement. After speaking with Mr. Ducksworth and taking his retirement on March 1, 1979, the plaintiff contacted the president of local 1220. At the time of this initial contact, the president of the union advised plaintiff that he would see what could be done concerning his severance pay. Nothing, however, was accomplished by the union and no action was taken on plaintiff's behalf. Plaintiff sought to contact the union officials after his initial meeting but was unable to do so.

Following his unsuccessful efforts with the union, plaintiff spoke with the president of District 189, Clyde Jordan. According to plaintiff, Mr. Jordan informed him that the only thing he could do would be to allow the plaintiff to return to work and take his sick-leave days while employed by District 189. Plaintiff, however, was unable to accept this offer because such action would cause a loss of his other retirement benefits. Plaintiff therefore filed suit in the circuit court of St. Clair County seeking compensation for the sick-leave days he accumulated prior to retirement. Plaintiff presented two theories for recovery. The first theory was promissory estoppel based on the long-

standing promise in the contract of employment made by the defendant board upon which the plaintiff had reasonably relied for many years. In the alternative, plaintiff argued the theory of promissory estoppel based on the statements of Mr. Williams to the effect that he would receive his accumulated sick leave in the form of severance pay upon retirement. Plaintiff's second theory was that he had a vested right to compensation for the accumulated sick-leave days in the form of severance pay upon retirement.

After hearing the evidence and examining the joint stipulation of facts, the trial court entered judgment for the plaintiff in the amount of $4,479.04 which represented 75% of the plaintiff's accumulated sick-leave days as of the date of the contract modification figured at a daily rate of $39.55 as stipulated by the parties. The trial court also found that the defendant had failed to prove its affirmative defense based on plaintiff's alleged failure to exhaust grievance procedures. Defendant thereafter filed a timely notice of appeal.

Defendant's first contention on appeal is that the trial court's findings that the plaintiff had exhausted his remedies under the collective-bargaining agreement and that the defendant had failed to prove its affirmative defense were contrary to the manifest weight of the evidence.

In its answer to the complaint filed by the plaintiff, the defendant alleged as one of its affirmative defenses that the plaintiff had not utilized the negotiated grievance procedure of the employment agreement. Plaintiff affirmatively alleged in his complaint that he had exhausted all the administrative remedies which applied to him. Both parties presented evidence concerning the exhaustion of contractual remedies. Plaintiff testified concerning his efforts to obtain assistance in the dispute from the union officials and the result of his efforts. Defendant presented the testimony of Mr. Ducksworth, who stated that no grievance had been filed with his office. In addition, the 1978 collective-bargaining agreement containing the grievance procedures applicable at the time of plaintiff's retirement was introduced into evidence.

After considering this evidence, the trial court held "[t]hat Plaintiff Charles Lawrence exhausted his requirements pursuant to the grievance arbitration procedure of Local 1220, in that it was clear that Local 1220 did not wish to pursue the grievance procedure in behalf of Charles Lawrence in this matter, and that Defendants have failed to prove its affirmative defense based upon the failure to exhaust grievance procedure." It is this factual finding by the trial court which the defendant now disputes on appeal.

In a bench trial, it is within the trial court's province to assess the credibility of the witnesses and determine the weight to be accorded to their testimony, to resolve the inconsistencies and conflicts, and to render its decision accordingly. (*Silas v. Robinson* (1985), 131 Ill. App. 3d 1058, 1061, 477 N.E.2d 4, 6-7; *Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 315, 469 N.E.2d 183, 189.) This court will not substitute its judgment for that of the trial court unless the trial court's findings are against the manifest weight of the evidence. (*Schroeder v. Meier-Templeton Associates, Inc.* (1984), 130 Ill. App. 3d 554, 559, 474 N.E.2d 744, 749.) For a finding or judgment to be against the manifest weight of the evidence, an opposite conclusion must be plainly evident. *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 100-01, 462 N.E.2d 924, 928.

In the case at bar, the trial court made a factual finding that local 1220 did not wish to pursue the grievance on behalf of the plaintiff. We find this to be supported in the record by the undisputed testimony of the plaintiff that he contacted the union president, received assurances that the union would assist him in the dispute, and the fact that no assistance was received and no action taken on behalf of the plaintiff. The defendant offered no evidence to dispute this testimony of the plaintiff. Furthermore, we note that exhaustion of the grievance arbitration procedure is not required if the effort would be futile. See *Schultz v. Owens-Illinois, Inc.* (7th Cir. 1982), 696 F.2d 505, 511; *Glover v. St. Louis-San Francisco Ry. Co.* (1969), 393 U.S. 324, 331, 21 L. Ed. 2d 519, 524, 89 S. Ct. 548, 552.

With respect to the affirmative defense, the trial court found that the defendant had failed to present sufficient evidence to prove its affirmative defense. The party who asserts an affirmative defense has the burden of proof and must establish it by a preponderance of the evidence. (*Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.* (1984), 123 Ill. App. 3d 95, 102, 462 N.E.2d 924, 929.) It is for the trier of fact to determine from all the facts and circumstances of the case whether the affirmative defense has been proved and a court of review will not disturb the findings of the trial court unless such findings are clearly contrary to the probative force of the evidence. (123 Ill. App. 3d 95, 102, 462 N.E.2d 924, 929.) The only evidence presented by the defendant with respect to its affirmative defense was the 1978 collective-bargaining agreement with the applicable provisions setting forth the grievance procedure and the testimony of Mr. Ducksworth that no grievance had been filed. The defendant offered no evidence conclusively establishing that plaintiff was required to file

a grievance and no evidence that his failure to do so was not excused. We find that the trial court's finding regarding the defendant's affirmative defense is supported by evidence in the record.

 The second and third issues raised by defendant on appeal concern payment of accumulated sick-leave days for nonteaching employees of District 189. Defendant contends first that "merit pay" for sick leave accumulated by attendance officers is not deferred compensation which "vests" and secondly, should the court disagree with this contention, defendant claims that plaintiff has failed to prove that there was in effect during the entire period of his claim a provision for "merit pay" for sick days accumulated by attendance officers. We turn our attention first to the latter half of this proposition for the reason that if we find the plaintiff has failed in his burden of proof, it will not be necessary to address defendant's contention regarding deferred compensation.

In reviewing the record, we find that we can quickly dispose of such issue raised by defendant in the instant appeal. Defendant contends there is insufficient evidence presented to support the trial court's conclusion that prior to the expiration of the 1975 collective-bargaining agreement, there was in effect a provision regarding sick-leave days for attendance officers which permitted such employees to accumulate sick-leave days for severance pay upon retirement. We note, in our review of the record, that plaintiff presented a stipulation which provided that prior to the 1975 collective-bargaining agreement, an attendance officer could accumulate sick-leave days to the same amount as a teacher. The parties also stipulated as to the amount and uses to which a teacher could put sick-leave days, as well as the conditions required to be met before such accumulated sick-leave days could be paid out to a teacher as severance pay upon retirement. In addition to these stipulations, there was the undisputed testimony of the plaintiff that he became aware of this contractual provision in the early 1960's, just after becoming employed by District 189, and that he relied upon this provision thereafter. We also note that during opening statements defense counsel, in an exchange with the court, conceded that from 1967 through the 1975 agreement, the provisions as claimed by the plaintiff existed. Furthermore, Mr. Ducksworth, an agent of the defendant, admitted that prior to 1977 there was a provision in the contract dealing with attendance officers and sick-leave days and that such provision allowed attendance officers to accumulate their sick-leave days and use them as teachers would be able to. The testimony of the plaintiff in conjunction with the admissions by the defendant provided sufficient evidence to sup-

port the trial court's finding that from 1959 through the 1975 agreement, the provision regarding sick-leave days for attendance officers existed as alleged by the plaintiff.

We find that although defendant urged at trial that the provision did not exist in any agreement prior to the 1975 collective-bargaining agreement, defendant presented no documents to support this contention. We accordingly find that plaintiff presented sufficient evidence to support a finding that at all times prior to August 30, 1976, attendance officers could receive compensation for accumulated sick-leave days upon retirement to the same extent as a teacher.

■■ We now turn our attention to defendant's contention that "merit pay" for sick leave accumulated by attendance officers is not deferred compensation which "vests". The trial court found that the plaintiff was entitled to be compensated for his sick-leave days accumulated prior to the deletion on August 30, 1976, of the provisions regarding accumulated sick-leave days of attendance officers in the collective-bargaining agreement. The trial court found that the plaintiff was entitled to 75% of his pay rate of one day's wages, to wit; $39.55 per day for a total of $4,479.04. The trial court based its finding upon the collective-bargaining agreement, the plaintiff's reliance on his right to accumulate sick-leave days, and the authority of the appellate court opinion in *Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 459 N.E.2d 1038. The question thus becomes whether this finding by the trial court is factually and legally correct. As noted earlier, defendant raised the issue of the sufficiency of plaintiff's proof regarding the provisions concerning the right to accumulate and use sick-leave days by attendance officers. As we have stated, we conclude that there was in existence from the outset of the plaintiff's employment to the expiration of the 1975 collective-bargaining agreement on August 30, 1976, contractual provisions which permitted attendance officers to accumulate sick-leave days to the same extent as teachers and, further, that attendance officers were entitled to have accumulated sick-leave days paid out as severance pay upon retirement if the conditions applicable for such a payment to a teacher were met by the attendance officer. Therefore, the question we are faced with is whether the plaintiff should be entitled to receive compensation for such accumulated sick-leave days when at the time of his retirement there were no contractual provisions in the collective-bargaining agreement allowing for such payment, inasmuch as those provisions had been deleted effective August 30, 1976. The trial court found that the plaintiff should be so compensated and, for the reasons stated below, we agree.

At trial plaintiff advanced two theories for recovery, (1) the equitable doctrine of promissory estoppel and (2) an equitable vesting of his rights to receive payments for his accumulated sick-leave days upon retirement. The lower court apparently relied upon both theories in entering judgment for the plaintiff. The trial court's order speaks of reliance on the part of the plaintiff, which is the primary element of promissory estoppel, and the vesting of the plaintiff's rights to receive such payment.

In holding that plaintiff had an equitable vested right to the payment of the accumulated sick-leave days, the court based its decision on the defendant's long-standing policy of allowing an attendance officer to accumulate sick-leave days to the same amount and purpose as a teacher. In finding this right to such payments to be vested, the contractual modification on August 30, 1976, deleting the provisions regarding accumulation of sick leave days was ineffective to eliminate the plaintiff's right, subject to divestment for failure to comply with the eligibility requirements of the provisions existing at the time of the modification. In reaching this conclusion the lower court relied on the appellate court's opinion in *Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 459 N.E.2d 1038.

In *Kulins* an employer instituted a policy in 1967 concerning the severance pay benefits of its employees. In 1975, after years of substantially the same provisions, the employer modified the severance-pay benefits and severely decreased the amounts of benefits in comparison to its initial policy. Shortly after the modification, the employer laid off large numbers of employees and then sought to apply the severance-pay benefits as set forth in the 1975 modification. The employees from Malco contended that the severance-pay benefits in the 1967 policy were vested, thereby precluding retroactive application of the 1975 modification. The court in *Kulins* stated as follows:

> "Because of the benefit to the employees and the character of the inducement of the employer, severance pay has frequently been characterized as a form of deferred compensation ***. [Citations.] It is a benefit for which employees work as much as they work for any other benefit held out to them as compensation by the employer [citation], and one which accrues during each work year that the agreement is in effect, not merely on the date that it becomes payable [citation]. When services are rendered, the right to secure the promised compensation is vested as much as the right to receive wages or any other form of compensation [citation], and the lack of a promise to vest does not revoke the employer's obligation to

pay." (121 Ill. App. 3d 520, 525-26, 459 N.E.2d 1038, 1043-44.)
The court in *Kulins* went on to state that once the service condition
was satisfied, the benefit derived from that service was vested and
could only be divested by failure to satisfy the eligibility provisions.
According to the court in *Kulins* "[the eligibility] provisions act only
to divest a vested right; they do not prevent vesting from occurring
initially." (121 Ill. App. 3d 520, 526, 459 N.E.2d 1038, 1044.) In con-
clusion, the court stated:

> "[T]he right to earn severance pay, a form of deferred compen-
> sation, arose and vested during the term of the 1967 policy
> and, consequently, survived the termination or modification of
> that policy. However, once the policy was modified on February
> 1, 1975, accrual under the 1967 policy terms ended. [Citation.]
> To hold otherwise would relegate the promise of severance pay
> to the illusory status of an offer revocable at the pleasure of
> the corporation and result in a harsh forfeiture to loyal, long-
> term employees. [Citations.]" (121 Ill. App. 3d 520, 527, 459
> N.E.2d 1038, 1044.)

In the case at bar, at the time of the plaintiff's hiring in 1959, the
defendant had in effect a policy concerning the right of attendance of-
ficers to accumulate and use sick-leave days. Over the years the rights
of attendance officers were gradually increased by decreasing the
term of service and increasing the amount of benefits. The defendant
board then eliminated that policy concerning severance pay for at-
tendance officers effective August 30, 1976, as reflected in the 1977
collective-bargaining agreement. At the time the plaintiff requested
his retirement benefits, the defendant denied the request on the basis
that there was no longer a provision in the written contract (the 1977
collective-bargaining agreement) which allowed for such a payment.
Like the trial court, we find the situation in the instant case to be
analogous to the facts presented to the appellate court in *Kulins*. We
conclude that the retirement benefit sought by plaintiff can be charac-
terized as a form of deferred compensation in that plaintiff worked
days when he was ill in order to accumulate sick-leave days as a re-
tirement benefit. Based on the policy considerations set forth in *Ku-
lins*, we find that the "merit pay" for accumulated sick-leave days un-
der the previous terms of the collective-bargaining agreements vested
upon the date that plaintiff fulfilled the service condition. Once that
service condition was fulfilled, the benefit derived from plaintiff's
term of service was vested and could only be divested by failure to
satisfy the eligibility requirements.

The trial court found that plaintiff had satisfied the employee

eligibility requirements prior to his retirement. As stipulated by the parties, those requirements were (1) 15 years of service with District 189, (2) the attainment of 65 years of age, and (3) the notification to the defendant in writing one year prior to the date of retirement. The parties stipulated that the plaintiff was 65 years old on the date of his retirement and that he had in excess of 15 years of service with the defendant. Plaintiff testified that he had timely sent the required letter notifying the defendant one year prior to the date of his retirement, and defendant offered no testimony to dispute or rebut this evidence. Plaintiff fulfilled the requirements of the policy while they were in effect by meeting the service term of 15 years of service prior to the date of the modification of the contract and therefore had a vested right to the payment of retirement benefits based on his accumulated sick-leave days.

To rule otherwise would result in a harsh forfeiture against the plaintiff, a loyal, long-term employee, like the plaintiffs in *Kulins*. Plaintiff's testimony was that he worked when ill, relying on the contract provisions that he would be compensated upon his retirement. The testimony of Mr. Ducksworth, that an employee who had accumulated a large number of sick-leave days would not be allowed to use those sick-leave days absent actual illness, established that plaintiff, even if he had known of the change in the contract provisions, would have been unable to use the sick-leave days which he had accumulated under the previous provisions of the contract at his pleasure without an actual sickness.

The defendant disputes the application of *Kulins* to the situation at bar by seeking to distinguish the factual situations involved. Defendant urges that in *Kulins*, the provision involved concerned a "true severance pay" provision rather than a "merit pay" provision for accumulated sick leave. We do not find this to be a meaningful distinction. In both *Kulins* and the case at bar, the court is faced with employees seeking compensation based on prior employment activities. In both cases, compensation is sought at the end of the employment relationship and is subject to certain conditions. In *Kulins* the severance policy was effective if the termination was within the reasons stated in the policy. In the case at bar, the rights of attendance officers to accumulate sick-leave days was contingent upon 15 years of service, the attainment of age 65, and one year's written notification of intent to retire.

The defendant also seeks to distinguish *Kulins* because the payment of the severance pay was "automatic" and was based solely on length of service. Defendant contends that there is no "merit" or

other facts involved in the payment of severance pay in a *Kulins*-type situation where an employee receives pay for time actually served, such pay being deferred until the employee retires. Defendant urges that *Kulins* is an automatic, nondiscretionary situation which is clearly distinguishable from the severance pay in the case at bar which is not automatic but depends on various factors. Again we do not find this to be a distinguishing factor. Under the policy in effect prior to August 30, 1976, if an attendance officer received accumulated sick-leave pay upon retirement, it was based on a specified percentage of the number of allowable days of accumulated sick-leave days. There was no "merit" required, other than the status of being an employee who worked and thus benefited the defendant rather than taking sick-leave days to which such an employee was entitled. We conclude that the deferred compensation offered to the employees in *Kulins* is sufficiently analogous to the ability to accumulate sick-leave days for retirement benefits in the case at bar.

Defendant also seeks to distinguish *Kulins* from the instant case by arguing that *Kulins* involved a private employer, whereas the instant case concerns a public employer and public funds. Citing *Byerly v. Board of Education* (1978), 65 Ill. App. 3d 400, 382 N.E.2d 694, defendant urges that there is a questions as to whether it can legally pay such a benefit. In *Byerly*, the school district refused to pay a retirement benefit based on accumulated sick leave to a teacher. However, in *Byerly*, the appellate court upheld the payment to the retired teacher noting that such a provision:

> "serves as an inducement to teachers to remain on the job instead of using sick leave days for less than substantial ailments. This, in turn, promotes continuity in the classroom as the need and use of substitute teachers is reduced. Finally, such a system rewards teachers who are conscientious. These results cannot be faulted." (65 Ill. App. 3d 400, 403, 382 N.E.2d 694, 697.)

We find that the same policy considerations which makes it important for a teacher to attend to his classroom duties would also apply to the duties performed by an attendance officer. The plaintiff in the case at bar was conscientious in his duties and had only taken 36 sick-leave days in almost 19 years of full-time service to District 189.

Defendant also raises a question concerning the effect of a trial court's order granting judgment in favor of the plaintiff. Defendant questions how it is to plan for and fund for such unused sick leave days because there is no way of knowing when individuals would use such sick-leave days versus being paid for them. Defendant raises similar contentions concerning the rate of pay and the percentage of days

for which an attendance officer would be compensated. We note that the questions raised by the defendant are the same problems which must be faced each and every time a teacher retires. We assume that the defendant is able properly to calculate the amount of compensation to which such a teacher is entitled to at the time of his retirement. Plaintiff has always contended that he is entitled to accumulate sick-leave days to the same extent as a teacher and to use his accumulated sick-leave days in the form of severance pay in the same manner as a teacher of District 189 would.

 ■ We additionally find, like the court in *Kulins*, that the doctrine of promissory estoppel offers further support to our conclusion that the "merit pay" for accumulated sick-leave days, as a form of deferred compensation, is an accrued or vested right, incapable of retroactive modification. Promissory estoppel is an equitable device invoked to prevent a person from being injured by a change in position made in reasonable reliance on another's conduct. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 527, 459 N.E.2d 1038, 1045.) It is a doctrine under which a plaintiff may recover without the presence of a contract, and the courts have permitted suit on this theory in the absence of a contract. (*Illinois Valley Asphalt, Inc. v. J. F. Edwards Construction Co.* (1980), 90 Ill. App. 3d 768, 770, 413 N.E.2d 209, 211.) To recover under this doctrine, the following elements must be met: (1) a promise, (2) which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (3) which induces such action or forbearance, and (4) which must be enforced in order to avoid injustice. (*Kulins v. Malco, A Microdot Co.* (1984), 121 Ill. App. 3d 520, 527, 459 N.E.2d 1038, 1045.) Whether or not these factors are all present is a question of fact to be determined by the trial court, and a court of review will not reverse the trial court's decision unless it is against the manifest weight of the evidence. *Illinois Valley Asphalt, Inc. v. J. F. Edwards Construction Co.* (1980), 90 Ill. App. 3d 768, 770, 413 N.E.2d 209, 211.

 In the instant case, plaintiff relied upon the provisions in the employment contracts for the period from 1959 through August 30, 1976. We find that to allow defendant to retract its promise after years of reliance by plaintiff would run counter to the fundamental principles of equity and justice and raise a question as to defendant's compliance with the covenant of good faith implied in every contract. (*Kulins v. Malco, A Microdot Co.*, (1984), 121 Ill. App. 3d 520, 528, 459 N.E.2d 1038, 1045.) We find that the doctrine of promissory estoppel can be applied to the instant case and find that it is unneces-

sary to discuss each element inasmuch as defendant does not dispute in its brief the propriety of the trial court's order as it deals with such compliance.

▆▆ Defendant does argue, however, that the doctrine of promissory estoppel is little favored under the law and cannot be invoked to defeat the operation of policies curtailing the expenditure of public funds by public agencies. While we agree that the doctrine of promissory estoppel is not favored in its application against the State and State agencies, it has been applied against such agencies, including school boards. (*Perlin v. Board of Education* (1980), 86 Ill. App. 3d 108, 407 N.E.2d 792.) We find that the requisite factors for the application of the doctrine of promissory estoppel have been met in this case. We conclude that the doctrine can be applied against the defendant board as further support for our conclusion that merit pay for accumulated sick-leave days, as a form of deferred compensation, is an accrued or vested right, incapable of retroactive modification by the defendants.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

HARRISON and WELCH, JJ., concur.