METROPOLITAN DISTRIBUTORS, INC., Plaintiff-Appellee, *v.* ILLINOIS DEPARTMENT OF LABOR *et al.*, Defendants-Appellants.

First District (2nd Division) No. 82—1020

Opinion filed May 24, 1983.

Tyrone C. Fahner, Attorney General, of Springfield (Richard J. Puchalski, Special Assistant Attorney General, of counsel), for appellants.

Sneider and Troy, of Chicago (James R. Sneider and Richard J. Troy, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

The Illinois Department of Labor (Department) appeals from an order permanently enjoining it from conducting any further investigations into severance pay claims by former employees of Metropolitan Distributors, Inc. (Metropolitan). The issue presented for review is whether injunctive relief was properly granted under the circumstances presented.

Metropolitan's complaint for injunctive relief asserts that it was an Illinois corporation engaged in warehousing and distributing various malt beverage products until September 4, 1981, when it went out of business. Metropolitan discharged all its employees, many of whom were members of the International Brotherhood of Teamsters, Local Union 794 (Union). The Union had entered into a collective bargaining agreement with Metropolitan which provided in relevant part that:

"Any permanent employee whose job is terminated because of *** [the discontinuance of a route,] who has more than one (1) year of employment shall be paid by his employer the average weekly earnings for the previous twelve (12) months prior to his termination, one (1) week for each year of employment up to a maximum of ten (10) weeks, same to constitute a severance allowance."

Shortly before they were discharged, 91 of Metropolitan's Union employees filed wage claim complaints with the Department claiming severance pay under the agreement. On January 14, 1982, the De-

partment's wage claim division conducted an initial hearing on the matter and scheduled another hearing for March 29, 1982. Metropolitan meanwhile brought this action to enjoin the Department's further investigation and hearings. The Department's motions to dismiss the complaint were denied, and the circuit court temporarily restrained the Department from conducting such further activities. An answer and affirmative defenses were filed by the Department. Certain exhibits were received by the circuit court and on April 19, 1982, the circuit court entered a permanent injunction, finding that severance pay claims are outside the purview of the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1979, ch. 48, par. 39m—1 *et seq.*) and beyond the jurisdiction of the Department to investigate.

■■ ■ The Department asserts, and we agree, that the initial determination of whether an agency has jurisdiction over a particular matter should be made by the agency itself. (*Endicott Johnson Corp. v. Perkins* (1943), 317 U.S. 501, 87 L. Ed. 424, 63 S. Ct. 339; *Scott v. Association for Childbirth At Home, International* (1981), 88 Ill. 2d 279, 430 N.E.2d 1012.) By substituting its judgment for that of the Department and determining that it lacked jurisdiction to conduct hearings on the severance pay claims of Metropolitan's former employees, the circuit court exceeded its authority. The scope of judicial review before the circuit court was limited to determining whether the investigation was commenced for a lawful and authorized purpose and whether the information sought was relevant to this purpose. *United States v. LaSalle National Bank* (1978), 437 U.S. 298, 57 L. Ed. 2d 221, 98 S. Ct. 2357; *Illinois Crime Investigating Com. v. Buccieri* (1967), 36 Ill. 2d 556, 224 N.E.2d 236.

The Department also contends that the legislature intended to include severance pay claims among those which it authorized the Department to investigate and, if possible, amicably resolve under the Illinois Wage Payment and Collection Act (Ill. Rev. Stat. 1979, ch. 48, par. 39m—1 *et seq.*) (present act). A brief review of the legislative history will be helpful, since it appears that this question is one of first impression in Illinois. The Act's predecessor statute, the wage payment act of 1937 (Ill. Rev. Stat. 1959, ch. 48, pars. 39g through 39m) (1937 act) had been interpreted by the supreme court in *Conlon-Moore Corp. v. Johnston* (1961), 23 Ill. 2d 341, 178 N.E.2d 336, to exclude vacation pay from within the ambit of the statute, since the legislature had not defined the term "wages." The court refused to construe wages to include vacation pay because the statutory language seemed to refer only to those sums "due and payable at regular intervals." The court went on to say that if the term had been more broadly de-

fined to include "every form of remuneration for personal services," as defined in the Unemployment Compensation Act (Ill. Rev. Stat. 1959, ch. 48, par. 344), it might have concluded otherwise.

In April 1971, the Commission on Labor Laws (Commission) submitted a report to the General Assembly suggesting the revision of the 1937 act. Among the proposed revisions was that the term "wages" be broadly defined to include a variety of benefits, including vacation pay. The Commission's proposals in this regard appear to have been accepted by the legislature. "Wages" are now defined as "compensation for labor or services rendered, whether the amount is determined on a time, task, piece, or any other basis of calculation." (Ill. Rev. Stat. 1979, ch. 48, par. 39m—2.) In addition, any contributions to an employee benefit, trust, or fund, which an employer is legally required to make under the terms of a collective bargaining agreement, are to be considered "wages" as well. (Ill. Rev. Stat. 1979, ch. 48, par. 39m—8.) "Final compensation" is defined as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays." (Ill. Rev. Stat. 1979, ch. 48, par. 39m—2.) The statute directs the Department "to assist any employee *** in the collection of wages or final compensation due him ***." (Ill. Rev. Stat. 1979, ch. 48, par. 39m—6.) From the sweep of the foregoing provisions, the Department argues that severance pay claims should have been construed to fall within the purview of the statute.

In contraposition, Metropolitan insists that the foregoing statutory provisions demonstrate the absence of Department jurisdiction, citing statutory construction principles to the effect that the enumeration of certain things in a statute conclusively implies the exclusion of all others, citing *People v. Dublin* (1978), 63 Ill. App. 3d 387, 380 N.E.2d 31, *People v. Schaffra* (1975), 30 Ill. App. 3d 600, 332 N.E.2d 163, and *In re Estate of Leichtenberg* (1956), 7 Ill. 2d 545, 131 N.E.2d 487. Metropolitan also relies on *In re Sneed* (1977), 48 Ill. App. 3d 364, 363 N.E.2d 37, for the proposition that courts must accept the plain and ordinary meaning of words found in a statute and must reject a forced construction which would not give effect to the intent of the legislature. For those reasons, Metropolitan maintains that the legislature did not intend severance pay claims to come within purview of the statute. We disagree.

■ In *Conlon-Moore Corp. v. Johnston* (1961), 23 Ill. 2d 341, the supreme court considered the question of whether the term "wages" as used in the 1937 act included "vacation pay" within its meaning and purpose. The court noted, first, the absence of an express defini-

tion of wages in the 1937 act. Further, the court observed that since the statute was concerned with prompt payment of wages due and payable, vacation pay was excluded, because it was cumulated until the vacation period arrived and then paid to the employee. In contrast, the present statute not only expressly includes vacation pay and final compensation within its terms, but defines wages broadly as "*compensation for labor or services rendered,*" as determined on "*any *** basis of calculation*" in addition to "time, task [or] piece." (Emphasis added.) "Final compensation" of employees, is defined to include wages and salaries, among other forms of compensation which have been earned. (Ill. Rev. Stat. 1979, ch. 48, par. 39m—2.) The statute authorizes the Department and its directors to assist any employee or class of employees "*** in the collection of wages or final compensation due ***." (Ill. Rev. Stat. 1979, ch. 48, par. 39m—6.) Unlike the 1937 act, therefore, the comprehensiveness of the present act demonstrates a legislative intent to include broad classes of compensation due employees within the responsibility of the Department. We hold that severance pay as provided for in the instant agreement constitutes either wages or final compensation under the statute. Accordingly, the circuit court's finding to the contrary was erroneous and must be reversed.

Metropolitan urges a contrary result, relying upon *McGowan v. Administrator, Unemployment Compensation Act* (1966), 153 Conn. 691, 220 A.2d 284, and *Department of Labor ex rel. Commons v. Green Giant Co.* (Del. Super. Ct. 1978), 394 A.2d 753, as authorities for the proposition that the statutory term "wages" cannot include nonrecurrent benefits such as severance pay. The approach taken by a majority of other jurisdictions is more persuasive. In this regard, *Owens v. Press Publishing Co.* (1956), 20 N.J. 537, 120 A.2d 442, has been most often cited and followed. In *Owens,* discharged employees sued their employer to recover severance pay which they claimed was due them under an expired collective bargaining agreement. In its consideration of the contentions raised by the parties, the New Jersey Supreme Court stated:

> "Severance pay is terminal compensation measured by the service given during the subsistence of the contract, in this case the collective bargaining agreement, payable on discharge from the employment not induced by misconduct, according to the prescribed formula, a means of recompense for the economic exigencies and privations and detriments resulting from the permanent separation of the employee from service for no fault of his own. In a real sense it is *remuneration for service*

*rendered during the period covered by the agreement.*" (Emphasis added.) (20 N.J. 537, 545-46, 120 A.2d 442, 446.)

(To the same effect are *Feola v. Valmont Industries, Inc.* (1981), 208 Neb. 527, 304 N.W.2d 377; *Compton v. Shopko Stores, Inc.* (1980), 93 Wis. 2d 613, 287 N.W.2d 720; *Scoa Industries, Inc. v. Bracken* (Del. 1977), 374 A.2d 263; *Globe-Democrat Publishing Co. v. Industrial Com.* (Mo. App. 1957), 301 S.W.2d 846; *Chase v. Warren Petroleum Corp.* (La. App. 1964), 168 So. 2d 861; *Montefalcone v. Banco Di Napoli Trust Co.* (1945), 268 App. Div. 636, 52 N.Y.S.2d 655; see also *Bolta Products Division v. Director of Employment Security* (1970), 356 Mass. 684, 255 N.E.2d 357.) In *Chase v. Warren Petroleum Corp.*, the Louisiana court of appeals observed (168 So. 2d 861, 864-65): "It is perhaps superfluous to note that in other jurisdictions *severance pay* or retirement benefits *have been considered to be in the nature of wages earned* and not as gratuities dependent upon the arbitrary will of the employer." (Emphasis added.) In other contexts, severance pay has been treated as part of an employee's wages. (*In re Public Ledger, Inc.* (3d Cir. 1947), 161 F.2d 762 (severance pay constituted wages wholly earned and accrued and thereby entitled to priority under section 64(a)(2) of the Bankruptcy Act (11 U.S.C. sec. 104(a)(2)); *McCloskey v. Division of Labor Law Enforcement* (9th Cir. 1952), 200 F.2d 402 (same); see also Annot., 40 A.L.R.2d 1044 (1955); Annot., 17 A.L.R.3d 374, 384 (1968).) The agreement between the Union and Metropolitan, providing for a severance allowance based upon one week of average weekly earnings for each year of employment up to a maximum of 10 weeks, is clearly final compensation for services rendered based upon previously earned wages as contemplated by the Act. Therefore, the Department had the right to investigate and assist claimants in securing such compensation as authorized by the Act. Ill. Rev. Stat. 1979, ch. 48, pars. 39m—6, 39m—11(a).

◼ Metropolitan nevertheless maintains its right to an injunction bottomed upon the supposition that should the Department proceed with its investigation and hearings, and should it decide to render assistance to Union employees, either or both the Department or employees may proceed to file legal actions seeking criminal and civil sanctions. Such sanctions, if brought, Metropolitan insists, would be contrary to the grievance and arbitration procedures contained within the collective bargaining agreement and would then violate Metropolitan's constitutional due process and equal protection rights. We decline to join in this conjectural excursion as to potential future actions by the parties. Furthermore, not every dispute is exclusively subject to binding arbitrable resolution, particularly when statutory rights

guarantying minimum substantive remedies to individual workers may be at issue. (*Barrentine v. Arkansas-Best Freight System, Inc.* (1981), 450 U.S. 728, 737, 67 L. Ed. 2d 641, 651, 101 S. Ct. 1437, 1443; *Alexander v. Gardner-Denver Co.* (1974), 415 U.S. 36, 50, 39 L. Ed. 2d 147, 159, 94 S. Ct. 1011, 1020.) These issues were not decided by the circuit court and no reference is made thereto in the order from which this appeal was taken. They are not properly before this court on review.

For the aforestated reasons, the order of injunction entered by the circuit court of Cook County must be reversed and the cause remanded with directions to vacate the permanent injunction entered therein. The Department thereby shall be permitted to proceed with its responsibilities under the Illinois Wage Payment and Collection Act. Ill. Rev. Stat. 1979, ch. 48, pars. 39m—1 through 39m—15.

Reversed and remanded with directions.

STAMOS and PERLIN, JJ., concur.