ERSKINE GRANT, Plaintiff-Appellant, v. BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee (Illinois State Board of Education *et al.*, Defendants).

First District (5th Division)    No. 1—94—1796

———

Opinion filed August 2, 1996.

John T. Hundley, of Hundley & Brussian, of Chicago, for appellant.

Patricia Whitten and LaVerne Rolle Saunders, both of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Erskine Grant, the plaintiff, appeals from the trial court's partial denial of his amended motion for enforcement of judgment. That prior judgment held that the plaintiff, a tenured teacher employed by the Chicago Board of Education (the Board), had been wrongfully discharged and ordered reinstatement with back pay and restoration of all benefits. Thereafter, the plaintiff filed a motion to enforce judgment, and the parties agreed that the plaintiff would be reinstated and allowed to retire. The plaintiff filed an amended motion to enforce judgment when the Board refused to compensate the plaintiff upon his retirement for 260.5 accrued sick days. The trial court

ordered the Board to pay the plaintiff for the 62 sick days restored to him as a result of his wrongful discharge but denied plaintiff's motion with respect to the 198.5 days he had accrued prior to his wrongful discharge. The plaintiff appeals from that portion of the judgment wherein he was denied payment of the 198.5 days of accumulated unused sick leave.[1]

In his initial motion to enforce judgment, the plaintiff moved the court to order the Board to extend to the plaintiff the early retirement incentives created by the legislation commonly referred to as the "5 + 5" program. That program provided early retirement incentives whereby certain tenured teachers could retire before the age of 60 by crediting them with an extra five years of creditable service and adding an extra five years onto their ages for pension purposes. Pub. Act 88—85, § 50, eff. July 14, 1993 (adding 40 ILCS 5/17—116.3, 17—116.4 (West Supp. 1993)).[2] In his initial motion to enforce judgment, the plaintiff also sought entry of a money judgment totalling $236,749.76, which included his calculations for back pay, personal leave days, holidays, insurance premiums, and summer institute compensation; restoration of 238.5 accrued sick days; and contributions to the teachers' pension fund on his behalf.

While plaintiff's motion to enforce judgment was pending, the Board and the plaintiff entered into a settlement agreement whereby the plaintiff would be reinstated as of December 22, 1993, reclassified as a reserve teacher effective January 3, 1994, and allowed to retire under the "5 + 5" program as a reserve teacher effective January 3, 1994.[3] The agreement further provided that in satisfaction of plaintiff's claims for back pay, vacation pay, summer institute pay, holiday pay, attorney fees, interest and lost insurance benefits, the

---

[1]The trial court's ruling with respect to the payment of the 62 days of accumulated unused sick leave is not in dispute, as the Board has not cross-appealed from that portion of the trial court's order.

[2]The "5 + 5" legislation, as originally enacted, required that application to retire be made by August 15, 1993. However, on November 14, 1993, the legislature extended the deadline such that the plaintiff became eligible to apply. Pub. Act 88—511, §§ 5, 30, eff. November 14, 1993 (adding 40 ILCS 5/17—116.5, 5/17—116.6 and amending 40 ILCS 5/17—116.3 (West Supp. 1993)).

[3]Public Act 88—511, effective November 14, 1993, which extended the "5 + 5" program, see *supra* footnote 2, also amended sections 34—84 and 34—1.1 of the School Code (105 ILCS 5/34—84, 5/34—1.1 (West Supp. 1993)) to allow the Board to reclassify senior teachers who did not have existing teaching positions as "reserve teachers" and to discharge "reserve teachers" without cause.

plaintiff agreed to accept the sum of $169,041.45. With respect to the restoration of the plaintiff's unused sick leave, the agreement provided:

"7. The Board and Mr. Grant agree that upon his discharge in June, 1989, Mr. Grant had accumulated 198.5 days of unused sick leave, that but for the discharge he would have accrued additional sick leave in each of the subsequent school years, and that he was or would have been entitled to three days of personal business leave each year, converted to additional accrued sick leave at the end of each school year. Accordingly, the Board and Mr. Grant agree that in satisfaction of his claims for restoration of sick leave, for additional accrued sick leave, and for additional accrued personal business days, Mr. Grant shall be credited with 260.5 days of sick leave as of January 3, 1993."[4]

With respect to plaintiff's right to be reimbursed for those accumulated unused sick days upon his retirement pursuant to the "5 + 5" program, the agreement acknowledged that the Board was negotiating with the teachers' collective bargaining agent on that issue. The settlement agreement provided that the Board:

"will use its best efforts to enter into an agreement with the collective bargaining agent under which payment for accumulated but unused sick days may be paid by the Board to teachers who elect to participate in the early retirement options of P.A. 88—85 and 88—511 in installments over 5 years."

The settlement agreement further provided:

"Although Mr. Grant's retirement under this agreement shall occur prior to the finalization of the [collective bargaining] Agreement currently being negotiated ***, the Board agrees that Mr. Grant shall be treated, for sick pay purposes, as other similarly situated employees with the same number of years of service and age who retire pursuant to the acts delineated [Public Acts 88—85 and 88—511] *** and the Agreement being negotiated."

Pursuant to the terms of the settlement agreement, the plaintiff resigned effective January 3, 1994. On January 12, 1994, a one-page collective bargaining agreement was entered into between the Board and the collective bargaining agent, the Chicago Teachers Union, with respect to the payment of accumulated unused sick days to persons retiring under the "5 + 5" program.[5] That agreement provided in pertinent part:

---

[4]This appears to be a typographical error. The date should have been January 3, 1994.

[5]It would appear that the January 12, 1994, collective bargaining agreement was a supplement to a preexisting collective bargaining agreement

"Pursuant to the provisions of Public Act 88—511 which requires that the Board and Union 'have entered into an Agreement under which the Agent (Union) agrees that any payment for accumulated unused sick days to which the employee is entitled upon withdrawal from service may be paid by the Board of Education in installments over a period of up to five years' before the early retirement incentive (5 + 5) can be legally implemented, the parties agree:

    1. that teachers who participate in the early retirement incentive (5 + 5) and who are eligible to receive sick pay upon withdrawal from service pursuant to Article 37—1 of the 1993-95 Agreement shall receive payment for those sick days in five equal installments paid annually, not later than January 31 of each of the five years subsequent to the teacher's withdrawal from service."

Article 37—1 of the 1993-95 collective bargaining agreement between the Board and the Chicago Teachers Union, which apparently was in force at the time of execution of the settlement agreement between the Board and the plaintiff,[6] provided that an employee would be paid a percentage of his accumulated unused sick days only if, at the time of resignation or retirement, the employee was 65 years old; or had completed 35 years of service; or was 60 years old with 20 to 34 years of service and had 40 or more unused sick days accumulated.[7] At the time of his retirement, the plaintiff was 52 years old and had 26 years of creditable service. With the additional years allowed under the "5 + 5" program, the plaintiff would be treated as being 57 years old and having 31 years of creditable service. As the plaintiff did not meet any of the alternate eligibility requirements under article 37—1, the Board refused to pay him for the 260.5 days of accumulated unused sick days, and the plaintiff thereupon filed his amended motion to enforce judgment. In ruling on that motion, the trial court ordered the Board to pay for the 62 days of sick leave that had accumulated while the plaintiff was suspended and disallowed

---

covering the period of September 1, 1993, through August 31, 1995, and that the January 12, 1994, agreement was necessitated by the "5 + 5" legislation pursuant to Public Act 88—511, effective November 14, 1993. While it is not clear from the record when the 1993-95 collective bargaining agreement was signed, it was apparently in force at the time the plaintiff and the Board signed the settlement agreement.

[6] See *supra* footnote 5.

[7] Article 37—1 of the 1990-93 collective bargaining agreement between the Board and the Chicago Teachers Union contained the same eligibility requirements for payment of accumulated unused sick days upon retirement.

the remaining 198.5 days that had accrued before his discharge. The court found that the purpose of the administrative review proceeding was to make the plaintiff whole as to the time he lost due to the wrongful discharge. The court also stated that the accumulation of 198.5 days of accrued sick leave was against public policy.

On appeal, the plaintiff argues that the trial court erred in disallowing payment for the 198.5 days that had accrued before his discharge because: (1) the accumulation of that unused sick leave was not against public policy; (2) payment of sick leave was a benefit to which he was entitled due to the wrongful discharge; (3) the "5 + 5" legislation required the payment of accumulated unused sick days; and (4) the Illinois Wage Payment and Collection Act (820 ILCS 115/1 et seq. (West 1994)) required payment of accumulated unused sick days. As an additional basis for recovery, the plaintiff argues that he is entitled to payment because the Board breached its contractual obligation to use its "best efforts" to enter into an agreement with the collective bargaining agent under which payment for accumulated unused sick days would be paid to teachers electing to participate in the "5 + 5" early retirement program.

With respect to plaintiff's first argument, the Board concedes that there is no public policy against accumulating 198.5 days of unused sick leave. The legislature permits Chicago school teachers, for pension purposes, to accumulate up to 244 days of unused sick leave. 40 ILCS 5/17—134 (West 1994). Teachers outside of the City of Chicago are permitted by section 24—6 of the School Code to accumulate up to 180 days of unused sick leave. 105 ILCS 5/24—6 (West 1994). These statutory provisions evidence a legislative intent to allow the accumulation of large numbers of unused sick days. See also 83d Ill. Gen. Assem., House Proceedings, May 10, 1983, at 176 (statements of Representative Matijevich in sponsoring amendment to section 24—6 of the School Code (Ill. Rev. Stat. 1981, ch. 122, par. 24—6) increasing amount of accumulated unused sick days from 90 to 180 days for non-Chicago teachers) ("if they have those days accumulated, they could at least have those days, if they ever become sick. And also, the way it is now, once someone reaches that number of 90 days, they may just go out and be sick, when they're really not sick. So this is that protection to the school district too"). Since public policy is what the legislature indicates by its enactments, the trial court was incorrect in its statement that the accumulation of 198.5 unused sick days was against public policy. See People ex rel. Healy v. Shedd, 241 Ill. 155, 163, 89 N.E. 332, 334 (1909), aff'd, 217 U.S. 597, 54 L. Ed. 896, 30 S. Ct. 696 (1910) ("[w]hen the legislature has acted upon a subject upon which it has power to legislate, public policy is what the statute, passed by it, indicates").

■ Notwithstanding the trial court's erroneous public policy statement, the basis for that court's ruling was its determination that the accumulation of 198.5 unused sick days was not an element of damages to the wrongful discharge action. In such an action, when a teacher's removal for cause has been adjudicated upon review or appeal in favor of the teacher, the trial court "shall order reinstatement and shall determine the amount for which the board is liable including but not limited to loss of income and costs incurred therein." Ill. Rev. Stat. 1991, ch. 122, par. 34—85 (now 105 ILCS 5/34—85 (West 1994)). See *Carter v. State Board of Education*, 90 Ill. App. 3d 1042, 414 N.E.2d 153 (1980). Under such circumstances, the teacher is entitled to back pay as well as the restoration of all benefits, rights and privileges the teacher would have retained had he remained on the job. See *East St. Louis School District No. 189 v. Hayes*, 237 Ill. App. 3d 638, 604 N.E.2d 557 (1992). Those consequential damages include the restoration of sick days that should have accrued during the dismissal period. *Board of Education, Springfield Public Schools, District No. 186 v. McCoy*, 123 Ill. App. 3d 1065, 463 N.E.2d 1308 (1984).

■ In accordance with the foregoing, the plaintiff's recovery under his wrongful discharge claim included the restoration of the sick days he had accumulated prior to his dismissal as well as those that would have accrued during the dismissal, that is, 260.5 days. See *East St. Louis School District No. 189 v. Hayes*, 237 Ill. App. 3d 638, 604 N.E.2d 557; *Board of Education v. McCoy*, 123 Ill. App. 3d 1065, 463 N.E.2d 1308. The Board does not dispute plaintiff's right to have those days restored and in fact agreed to the restoration of the 260.5 days in the settlement agreement. However, the Board argues, and we agree, that the plaintiff's right to have those accumulated days restored to him is not synonymous with a right to receive payment for those days upon his retirement. The latter right to payment is governed by the teachers' collective bargaining agreement executed by the Board of Education of the City of Chicago and the Chicago Teachers Union; by legislative enactments that confer greater rights than those provided by that contract (see *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 649 N.E.2d 369 (1995) (any provision in collective bargaining agreement in violation of a statute shall not be effected or implemented)); and by the settlement agreement between the plaintiff and the Board.

■ Under article 37—1 of the collective bargaining agreement, a retiring teacher is entitled to payment for accumulated unused sick days if that teacher is 65 years old; or has 35 years of service; or is 60

years old, has 20 to 34 years of service, and has 40 or more unused sick days accumulated. As discussed above, the plaintiff did not satisfy any of these alternate eligibility requirements and thus he did not qualify for payment of accumulated unused sick days under the collective bargaining agreement. See *Lawrence v. Board of Education of School District 189*, 152 Ill. App. 3d 187, 503 N.E.2d 1201 (1987).[8]

The plaintiff argues that, notwithstanding the provisions of the collective bargaining agreement, he is entitled to payment under the "5 + 5" early retirement incentive legislation and/or under the Illinois Wage Payment and Collection Act. The "5 + 5" early retirement incentive legislation provides, in pertinent part, at section 17—116.3 of the Pension Code:

> "(a) A teacher who is covered by a collective bargaining agreement shall not be eligible for the early retirement incentives provided under this Section unless the collective bargaining agent and the Board of Education have entered into an agreement under which the agent agrees that any payment for accumulated unused sick days to which the employee is entitled upon withdrawal from

---

[8]The plaintiff cites *Lawrence v. Board of Education of School District 189*, 152 Ill. App. 3d 187, 503 N.E.2d 1201 (1987), in support of his argument that he had a vested right to receive payment for accumulated unused sick days at the time of his retirement. In *Lawrence*, under the collective bargaining agreement there in force, one became eligible for the payment of accumulated unused sick days as severance pay upon retirement if he had 20 years of service or if he had 15 years of service and was 65 years old at the time of retirement. In addition to the service requirement, the employee also had to notify the employer in writing one year prior to the date of retirement. Lawrence fulfilled the service and notification requirements; but before he applied to retire, the contract provision for payment of accumulated unused sick days was deleted from the collective bargaining agreement. The court found that the plaintiff's right to receive payment for his accumulated unused sick days vested on the date he fulfilled the service condition. The court further stated, "Once that service condition was fulfilled, the benefit derived from plaintiff's term of service was vested and could only be divested by failure to satisfy the eligibility requirements." 152 Ill. App. 3d at 198, 503 N.E.2d at 1209. Since Lawrence met the eligibility requirements, he was entitled to payment for his unused sick days that accumulated prior to the date of the contract modification.

While *Lawrence* may support the plaintiff's contention herein that he, too, had a vested right to the payment of accumulated unused sick days upon his retirement because he satisfied the service condition of 20 to 34 years of service, unlike the plaintiff in *Lawrence*, the plaintiff here was "divested" of that right by failing to meet the corresponding age eligibility requirement of being 60 years old at the time of retirement.

service may be paid by the Board of Education in installments over a period of up to 5 years ***." 40 ILCS 5/17—116.3 (West Supp. 1993), as amended by Pub. Act 88—511, § 30, eff. November 14, 1993.[9]

The plaintiff reads this provision as requiring the payment for accumulated unused sick days to anyone who retires under the "5 + 5" program. He argues that such a construction is required by the language of the statute and by the legislative intent and purpose of the "5 + 5" program, considering the legislature's presumed knowledge of case law and other statutory provisions.

Plaintiff's interpretation of paragraph (a) of section 17—116.3 and the related provisions of the Pension Code is incorrect. By its terms, that paragraph does not require the payment of accumulated unused sick days to every teacher who retires under the "5 + 5" program. In fact, it does not require payment to *any* retiring teacher. It merely states that teachers covered by a collective bargaining agreement will not be eligible to retire under the "5 + 5" program unless the bargaining agent and the Board agree that any payments for accumulated unused sick days be made in installments over a period of up to five years. Section 17—116.3(a) does not establish a retiring teacher's right to payment but instead protects the Board by insisting that the Board have the right to make any payments for accumulated unused sick days in installments over a five-year period rather than immediately upon the teachers' retirements.[10]

It also is clear that the "5 + 5" legislation was not intended to replace the provisions of the teachers' collective bargaining agreement, wherein the right to payment is created. Paragraph (a) of sec-

---

[9]It would appear that plaintiff's retirement under the classification of "reserved teacher" was governed by amended section 17—116.3, which became effective November 14, 1993. See Pub. Act 88—511, § 30, eff. November 14, 1993. Therefore, we quote from that enactment's provisions on payment for accumulated unused sick leave. However, the quoted provision is identical under all of the "5 + 5" early retirement incentives legislation. See 40 ILCS 5/17—116.3, 17—116.4, 17—116.5, 17—116.6 (West Supp. 1993).

[10]The plaintiff argues that under the "last antecedent rule" of statutory construction, the phrase "to which an employee is entitled" modifies "sick days" rather than "payment." See *Board of Education of Rockford School District No. 205 v. Regional Board of School Trustees*, 135 Ill. App. 3d 486, 481 N.E.2d 1266 (1985) (under "last antecedent rule" of statutory construction relative or qualifying words, phrases, or clauses are to be applied to words or phrases immediately preceding). Even so, such a construction does not create any right of payment but merely acknowledges that employees eligible for the "5 + 5" program would have been entitled to accumulate sick days prior to their retirement.

tion 17—116.3 acknowledges the existence of that agreement and the negotiating authority of the Board and the collective bargaining agent to establish the timing of payments for accumulated unused sick days to "5 + 5" retirees. That paragraph merely limits that negotiating authority to the extent that if the Board and the collective bargaining agent do not agree to extend the time period over which payments for accumulated unused sick leave could be paid, the "5 + 5" program could not be implemented.

While we believe that the language of the statute is unambiguous, such that resort to rules of statutory construction to ascertain the intent of the legislature is unnecessary (see *Board of Education of Center Cass School District No. 66 v. Sanders*, 161 Ill. App. 3d 723, 515 N.E.2d 280 (1987)), we nevertheless examine plaintiff's arguments in that regard. The plaintiff first argues that the purpose for the "5 + 5" early retirement incentives legislation suggests a legislative intent to pay all "5 + 5" retirees for their accumulated unused sick days. We disagree. Early retirement incentives were first enacted in 1991 as part of the Governor's First Emergency Budget Relief Act (Pub. Act. 87—14, eff. July 24, 1991). Those incentives were offered to various state employees, including teachers in cities and school districts having a population of less than 500,000. See Pub. Act 87—14, § 1—6, eff. July 24, 1991 (adding Ill. Rev. Stat. 1991, ch. 108$^{1}/_{2}$, par. 16—133.3). Section 1—1 of that act stated that the primary purpose of that act was "to encourage reductions in State spending and the level of State employment." Pub. Act 87—14, § 1—1, eff. July 24, 1991. That section also included a finding and declaration by the General Assembly that "[t]he early retirement option *** will reduce State spending by an estimated $50 million, and thereby help the State balance its budget." Pub. Act 87—14, § 1—1(5), eff. July 24, 1991. Although the 1993 "5 + 5" early retirement incentive legislation applicable to Chicago teachers did not contain that stated purpose or finding, the stated purpose and finding in the 1991 "5 + 5" legislation logically can be attributed to the later enactments. See *People ex rel. Community High School District No. 231 v. Hupe*, 2 Ill. 2d 434, 448, 118 N.E.2d 328, 335 (1954) ("it is to be presumed that the several enactments relating to the one subject are governed by one spirit and one policy and that the legislature intended the enactments to be consistent and harmonious"). Since all of the early retirement incentive programs were enacted as cost-saving measures, it would be illogical for the legislature to impose financial burdens upon school districts and boards to pay all "5 + 5" retirees for their

accumulated unused sick days where there was previously no statutory or contractual obligation to do so.[11]

We also reject plaintiff's reliance on prior case law as evidence of a legislative intent to compensate all "5 + 5" retirees for their accumulated unused sick days. The legislature is presumed to be aware of judicial decisions concerning prior and existing laws. *Kozak v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 95 Ill. 2d 211, 447 N.E.2d 394 (1983); 2B N. Singer, Sutherland on Statutory Construction § 50.01 (5th ed. 1992). None of the cases cited by the plaintiff created an unqualified right to payment for accumulated unused sick days, and, thus, there can be no presumption in favor of an intent to incorporate such a right into the "5 + 5" legislation. In one of the cases cited by plaintiff, *Lawrence v. Board of Education of School District 189*, 152 Ill. App. 3d 187, 503 N.E.2d 1201 (1987), the court held that the plaintiff therein was entitled to be compensated for his accumulated unused sick days upon retirement. However, that right was based upon the plaintiff's satisfaction of the eligibility requirements of his employment contract. The other two cases cited by Grant, *Board of Education, Springfield Public Schools, District No. 186 v. McCoy*, 123 Ill. App. 3d 1065, 463 N.E.2d 1308 (1984), and *People ex rel. Korzen v. Englemann*, 32 Ill. 2d 196, 204 N.E.2d 760 (1965), did not even deal with the right to payment of accumulated unused sick leave upon retirement. *McCoy* dealt with a teacher's right to the restoration of accumulated sick leave upon reinstatement. *Englemann* dealt with the Board's practice of carrying accrued sick leave as an expense liability on its financial statement. In approving that accounting method, the court stated that the accrued sick leave should be treated as an expense because it would be due at a future time during the employment relationship. The court did not, however, create or acknowledge the existence of a substantive right to payment of accrued sick leave at retirement.

Finally, we reject plaintiff's citation to other legislation as evi-

---

[11]Plaintiff's argument that the legislature was concerned that the failure to pay for accumulated unused sick days would pose a "roadblock" to the success of the "5 + 5" program is also without merit. The "5 + 5" program did not cause any teacher to forfeit rights of payment for accumulated unused sick days. Those retirees who satisfied the collective bargaining agreement eligibility requirements for payment of accumulated unused sick days would continue to receive that payment. Those who did not satisfy the eligibility requirements would continue not to be entitled to payment. Rather than causing any forfeiture, the "5 + 5" program actually allowed some teachers who would not have otherwise met the eligibility requirements to meet those requirements by increasing their age and years of service.

dence of the legislature's intent to compensate all "5 + 5" retirees for their accumulated unused sick days. In this regard, the plaintiff cites to the 1991 "5 + 5" legislation, particularly section 16—133.3(c) of the Pension Code, enacted as part of the Governor's First Emergency Budget Relief Act. Ill. Rev. Stat. 1991, ch. 108¹/₂, par. 16—133.3(c) (now 40 ILCS 5/16—133.3(c) (West 1994)), created by Pub. Act 87—14, art. 1, § 1—6, eff. July 24, 1991. That provision, which requires the "5 + 5" retiree to make a contribution into the retirement system before the retirement annuity would become payable, allows the retiree to make that contribution using his "lump sum payment for accumulated vacation, sick leave and personal leave upon withdrawal from service." Ill. Rev. Stat. 1991, ch. 108¹/₂, par. 16—133.3(c) (now 40 ILCS 5/16—133.3(c) (West 1994)). The plaintiff argues that the reference in this provision to a "lump sum payment" suggests that such a lump sum payment is required to be made to every retiree. Such an inference is implausible because what the plaintiff omitted from the provision he cited was the prefatory phrase, "*[i]f the member receives a lump sum payment for accumulated vacation, sick leave and personal leave upon withdrawal from service.*" (Emphasis added.) Ill. Rev. Stat. 1991, ch. 108¹/₂, par. 16—133.3(c) (now 40 ILCS 5/16—133.3(c) (West 1994)). Thus, the earlier legislative enactment did not create a right to receive payment for accumulated sick leave but only acknowledged the existence of such payments to certain "5 + 5" retirees.

The plaintiff next argues that he was entitled to be compensated for his accumulated unused sick days in accordance with the Illinois Wage Payment and Collection Act (the Wage Act). 820 ILCS 115/1 *et seq.* (West 1994). Section 5 of that act requires the employer to pay the final compensation of a separated employee in full within certain specified time limits. 820 ILCS 115/5 (West 1994). "Final compensation" is defined in that act as:

> "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer *pursuant to an employment contract or agreement between the 2 parties.*" (Emphasis added.) 820 ILCS 115/2 (West 1994).

The plaintiff cites to numerous cases in which the Wage Act required employer payments for accrued vacation time, accrued year-end bonuses, accrued commissions and union and health plan contributions. Those cases are not applicable here since they involved payments specifically required by statute. The Wage Act does not specifically require the payment of accrued sick leave. We also distinguish *Metropolitan Distributors, Inc. v. Illinois Department of*

*Labor*, 114 Ill. App. 3d 1090, 449 N.E.2d 1000 (1983), another case cited by the plaintiff. In that case, the court held that the Wage Payment and Collection Act required the payment of severance pay. In *Metropolitan Distributors, Inc.*, however, the severance pay was required by the employee's collective bargaining agreement.[12] Here, as discussed previously, there is no collective bargaining agreement that requires the payment of accumulated unused sick leave to the plaintiff. It is the absence of such a contractual obligation that distinguishes the instant case from *Metropolitan Distributors, Inc.* and that makes the Wage Act inapplicable. See 820 ILCS 115/2 (West 1994) ("any other compensation owed the employee by the employer pursuant to an employment contract or agreement").

While the plaintiff is not entitled to payment of his accumulated unused sick days pursuant to the provisions of the teachers' collective bargaining agreement or pursuant to statute, we have reviewed the settlement agreement between the Board and the plaintiff to determine whether that entitlement is nevertheless warranted. In so doing, we have determined that the provision of the settlement agreement regarding the disposition of plaintiff's unused sick days is ambiguous, requiring reversal and remand for resolution of that ambiguity.

As discussed above, at the time the settlement agreement was executed, the Board and the teachers' collective bargaining agent, the Chicago Teachers Union, had not reached a collective bargaining agreement as required by the "5 + 5" legislation enacted on November 14, 1993. According to the terms of that settlement agreement, the plaintiff would be credited with 260.5 days of sick leave, which included the 198.5 days accumulated before plaintiff's discharge, and the plaintiff would be treated for sick pay purposes "as

---

[12]The plaintiff also cites *Kulins v. Malco, A Microdot Co.*, 121 Ill. App. 3d 520, 459 N.E.2d 1038 (1984), as support for his argument that the payment of accumulated unused sick leave is required under the Illinois Wage Payment and Collection Act. *Kulins* was not decided under the Wage Act. *Kulins* is further distinguishable because it concerned an employee's right to severance pay which the court found to have vested because the employee satisfied the service condition. Although the plaintiff in the case at bar may have satisfied the service condition in the collective bargaining agreement by working 20 to 34 years, he did not meet the age eligibility requirement under the collective bargaining agreement such that any vested right he may have had to payment was "divested" when he failed to meet that eligibility requirement. See *supra* footnote 8.

other similarly situated employees with the same number of years of service and age." In addition, the Board agreed

> "to use its best efforts to enter into an agreement with the collective bargaining agent under which payment for accumulated but unused sick days may be paid by the Board to teachers who elect to participate in the early retirement options of P.A. 88—85 and 88—511."

The plaintiff argues that the Board violated the terms of the settlement agreement by failing to use its best efforts to enter into an agreement with the collective bargaining agent whereby the Board would become obligated to pay all "5 + 5" retirees for their accumulated but unused sick days.

While the Board did not respond to this argument in its brief on appeal, at oral arguments the Board contended that its ability to negotiate the collective bargaining agreement was restricted by the Illinois Educational Labor Relations Act (115 ILCS 5/1 *et seq.* (West 1994)), by the terms of the prior collective bargaining agreement and by various financial constraints. The Board argued that, in negotiating the collective bargaining agreement, it was obligated to consider not only the plaintiff's interests but also the costs it would incur if it agreed to the payment of accumulated unused sick days to all teachers retiring under the "5 + 5" program. According to the Board, the best efforts clause was not intended to be a guarantee to the plaintiff that he would receive payment for his accumulated unused sick days. The Board contended that if it intended such a result, it would have agreed to that payment in the settlement agreement with the plaintiff. Finally, the Board argued that it did use its best efforts to allow for the payment of accumulated unused sick days because such a provision was incorporated into the collective bargaining agreement even though that provision did not apply to the plaintiff.

A best efforts undertaking has been likened to the exercise of good faith implied in all contracts (see, *e.g., Louis v. Lexington Development Corp.*, 253 Ill. App. 3d 73, 625 N.E.2d 289 (1993); *Abbott v. Amoco Oil Co.*, 249 Ill. App. 3d 774, 619 N.E.2d 789 (1993) (duty of good faith implied in every contract as a matter of law)). *United States v. Board of Education*, 799 F.2d 281, 292 (7th Cir. 1986) ("any best efforts clause *** can be satisfied by any of a wide range of possible levels and types of performance that comport with the exercise of 'good faith' by the obligor"); *Bloor v. Falstaff Brewing Corp.*, 601 F.2d 609 (2d Cir. 1979). See also *Western Geophysical Co. v. Bolt Associates, Inc.*, 584 F.2d 1164, 1171 (2d Cir. 1978) (best effort to promote a product means at least "active exploitation in good faith").

The obligation to use one's best efforts on behalf of another does

not require the obligor to ignore its own interests. In a New York case, *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 (1972), a publisher agreed to use its best efforts to promote an author's works. The court recognized that the best efforts clause did not close off the right of a publisher to issue books on the same subject by other authors, even where promotion of the latter would adversely affect the contracting author's sales. However, the court further stated:

"Although a publisher has a general right to act on its own interests in a way that may incidentally lessen an author's royalties, there may be a point where that activity is so manifestly harmful to the author, and must have been seen by the publisher so to be harmful, as to justify the court in saying there was a breach of the covenant to promote the author's work." 30 N.Y.2d at 46, 281 N.E.2d at 145, 330 N.Y.S.2d at 334.

Similarly, in cases dealing with the implied covenant of good faith, courts have stated:

"Good faith between contracting parties requires one vested with contractual discretion to exercise it reasonably and not arbitrarily or capriciously [citation], and parties to a contract impliedly promise not to do anything which will destroy or injure the other party's right to receive the fruits of the contract [citation]." *Vincent v. Doebert*, 183 Ill. App. 3d 1081, 1090, 539 N.E.2d 856, 862 (1989).

The question of whether a party has satisfied its "best efforts" or good-faith obligations is a factual one (see *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publishing Co.*, 30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329), dependent upon the nature of the undertaking for which the "best efforts" commitment has been made. See *United States v. Board of Education*, 799 F.2d at 292 ("[t]he nature and circumstances of the underlying obligation help to determine what constitutes good faith"). See generally 3 A. Corbin, Corbin on Contracts § 541, at 94-95 (1960) (in determining good faith and fair dealing, "the court makes use of processes called interpretation, implication and construction").

Here, the settlement agreement is manifestly ambiguous as to the nature of the Board's "best efforts" undertaking. It is not clear from the language of the settlement agreement whether the Board agreed to use its "best efforts" to obtain a provision in the collective bargaining agreement that would encompass and effectuate reimbursement to the plaintiff for his unused sick days or whether the Board simply promised to obtain a provision in the collective bargaining agreement regarding the payment of accumulated unused sick days that would comply with the requirements of the "5 + 5" legisla-

tion which, as noted previously, did not require reimbursement but, rather, required that if reimbursement was made that it be made in installments over a five-year period. Under the latter interpretation, the Board would not have been obligated to exert an effort to obtain a collective bargaining agreement that provided for the payment of plaintiff's unused sick days and would not have violated the "best efforts" provision of the settlement agreement provided the plaintiff was treated as other similarly situated retirees. The former interpretation would be more consistent with the fact that the "best efforts" clause was incorporated seemingly as a concession to the plaintiff while the latter construction gives greater credence to the actual language of the "best efforts" clause.

Since the trial court made no findings with respect to the settlement agreement, we remand this case in order that the ambiguity in the settlement agreement may be resolved. Toward that end, the court may consider any relevant parole evidence offered by the parties and other pertinent facts already of record including the extent to which the "best efforts" clause in the settlement agreement was designed to reflect any interrelationship between the apparently preexisting 1993-95 collective bargaining agreement and the January 12, 1994, supplemental agreement which was entered into pursuant to the newly enacted "5 + 5" legislation.[13] If on remand the trial court determines that under the "best efforts" clause the Board obligated itself to the plaintiff to do more than merely effectuate a collective bargaining agreement that complied with the "5 + 5" legislation, the court must then determine whether there was compliance by the Board with that "best efforts" commitment notwithstanding the exclusion of the plaintiff from the class of retirees eligible for payment of accumulated unused sick days.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McNULTY, P.J., and COUSINS, J., concur.

---

[13]See *supra* footnote 5.