FAMILY TAILORED HOMES, INC., d/b/a Remax, Inc., Plaintiff-Appellee, v. WILLIAM MANFIELD, Defendant-Appellant.

Third District   No. 3—91—0818

Opinion filed September 4, 1992.

Klockau, McCarthy, Ellison & Marquis, P.C., of Rock Island, and Lester Weinstine, of Weinstine & Shirk, of Morrison (Robert L. Ellison, of counsel), for appellant.

Kelli D. Walker, of Pignatelli & Pignatelli, of Rock Falls (Louis F. Pignatelli, of counsel), for appellee.

JUSTICE GORMAN delivered the opinion of the court:

Plaintiff Family Tailored Homes, Inc., doing business as Remax, Inc., sued defendant William Manfield to recover damages for breach of a listing agreement. The trial court rendered judgment for plaintiff. We affirm.

Plaintiff Family Tailored Homes, Inc., d/b/a Remax, Inc., sued defendant William Manfield for money damages for an alleged breach of an exclusive listing agreement. In its original complaint, plaintiff alleged, among other things, that under the terms of its listing agreement and renewals thereof with defendant, plaintiff had the right to a commission on the sale of defendant's residence.

At trial, the testimony revealed that the original listing agreement was extended three times. The final extension expired on July 31, 1988. Under the terms of the agreement, plaintiff had the right to a commission on the sale of the house if sold within 45 days after expiration of the listing to any prospect introduced to the property by the broker.

Robert Corwell, one of plaintiff's principals, testified that on July 31, 1988, he and defendant discussed an offer on defendant's home and discussed Tim Austin as a prospective purchaser of the residence. He stated that that same evening, his wife, Diane Corwell, a real estate broker with plaintiff, discussed extending the listing agreement with defendant. He testified that during the term of the agreement he did not notify defendant in writing that Tim Austin was a prospect.

Diane Corwell testified that around March 11, 1988, she told defendant that one of plaintiff's brokers had spoken with Susan Austin, Tim Austin's wife, who expressed interest in the property. Mrs. Corwell further testified that on July 31, 1988, and on August 2, 1988, she again told defendant that she believed that Tim Austin was still a viable prospect. She also stated that on August 2, 1988, she drew up a listing agreement extension to which defendant had her add the words "Seller owes no commission if sale is made by him and buyer has not looked with an agent." She testified that Tim Austin did not look at the property with any of plaintiff's agents and that she had never notified defendant in writing that Austin had been introduced to the premises by plaintiff. She further testified that the listing agreement provided that defendant was to disclose any prospects that he had on the premises.

Grace Merlak, a real estate broker with plaintiff, testified that on March 1, 1988, she spoke with Susan Austin about buying defendant's residence. She stated that on March 4, 1988, and on July 29, 1988, she called Tim Austin about the Manfield listing being available. She stated that she did not show either of the Austins the home.

Mary Paul Long, defendant's former wife, testified that she or defendant contacted Susan Austin about viewing the house and that in June 1988, Susan Austin did see the residence. Long also stated that in early July 1988, Tim Austin viewed the house as a potential

purchaser and discussed the mechanical aspects of the house with defendant. Long testified that defendant told her, prior to July 31, 1988, that he had reached an agreement with Tim Austin and that he was having a contract prepared for her to sign. She testified that there were frequent phone calls between Tim Austin and defendant regarding the house and that defendant was extremely secretive regarding the transaction.

Tim Austin testified that his former home was about 50 yards from defendant's residence. He stated that plaintiff's "For Sale" sign was in the defendant's yard in March or April 1988. He said that in early July, he contacted defendant to find out if the property was still listed and told him that when the listing was up, he might call defendant. He testified that he made no offer to purchase the residence during July 1988. He also testified that in July 1988 one of plaintiff's agents telephoned him regarding any interest he might have in the listing and that he told the agents that he was not interested.

Austin further stated that on August 1, 1988, he called defendant and on August 2, 1988, he viewed the house and orally offered to purchase the property. Austin stated that his $3,000 earnest money check was dated August 2. He said that he then called his attorney, who drew up a real estate contract which he and his wife signed on August 3. Austin further stated that after the contract was drafted, defendant wrote onto the contract the words "Buyer affirms that they have not been shown this property through the agency of a real estate broker, nor have they been shown this property by anyone at any time prior to August 1, 1988." Austin testified that he assented to the additional language.

Defendant testified as to the listing agreements. He also stated that on July 31, he told Diane Corwell that he was going to try to sell the house himself. He stated that he placed a "For Sale By Owner" advertisement in the local newspaper which ran August 1 through 3, 1988. Defendant testified that at no time before August 1, 1988, did he tell his wife that he had sold the house to Tim Austin.

The trial judge rendered judgment for plaintiff and granted plaintiff's motion to conform pleading to proof.

Defendant now appeals.

Defendant first argues that he was not fairly apprised by the pleadings of plaintiff's theory that the sale to the Austins took place within the primary time period of the extension agreement.

Section 2—616(c) of the Code of Civil Procedure provides that "[a] pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs, upon terms as to costs and con-

tinuance that may be just." (Ill. Rev. Stat. 1991, ch. 110, par. 2—616(c).) The allowance of amendments following the presentation of evidence rests within the sound discretion of the trial court, and the ruling of the trial court will not be disturbed absent an abuse of discretion. (*Svenson v. Miller Builders, Inc.* (1979), 74 Ill. App. 3d 75, 392 N.E.2d 628.) The trial court's power to allow amendments should be freely exercised so that a party may fully present its cause of action. (*Maus v. Marathon Petroleum Co.* (1992), 229 Ill. App. 3d 864, 594 N.E.2d 393.) Furthermore, a factor to be considered in ruling on a motion to amend pleadings is whether the motion will prejudice or surprise the other party. *Trinity Bible Baptist Church v. Federal Kemper Insurance Co.* (1991), 219 Ill. App. 3d 156, 578 N.E.2d 1375.

■ In the instant case, plaintiff alleged the existence of the written listing agreement and extensions thereof and alleged that the purchaser was solicited under the terms of the agreement. Even though the language in the complaint was vague, all of the contracts between plaintiff and defendant were attached to the complaint as exhibits and were incorporated into the complaint. The times and places for any possible liability were pled through the attached documents. Furthermore, at trial, proof was presented by plaintiff that the sale was arranged prior to the expiration of the listing agreement. Mary Paul Long testified that defendant told her before July 31, 1988, that he had reached an agreement with the Austins to purchase the residence and that the house had been sold to them. Finally, defendant did not show that the allowed amendment prejudiced him. Accordingly, we cannot say that the trial court abused its discretion in allowing plaintiff an amendment to conform the pleadings to the proofs.

Defendant next argues that the finding that the sale took place within the period of the listing agreement was against the manifest weight of the evidence.

Where findings of fact must necessarily be determined from the credibility of the witnesses, it is particularly true that an appellate court will defer to the findings of the circuit court unless they are against the manifest weight of the evidence. *Chicago Investment Corp. v. Dolins* (1985), 107 Ill. 2d 120, 481 N.E.2d 712.

■ In this case, there was direct evidence that the sale took place within the period of the listing agreement. Mary Paul Long testified that defendant told her before the end of July that the house had been sold to Tim Austin. She stated that he made this comment to her after she had overheard the telephone calls at his office between defendant and Tim Austin. She testified that she told him she was concerned because the listing agreement had not expired and

that defendant said that he had everything taken care of and there was not a problem. She also testified that she knew when Tim Austin and defendant agreed to the purchase of the house based on the frequent telephone calls between the two and the fact that defendant was extremely secretive with regard to the transaction.

There was also circumstantial evidence that the agreement was reached prior to the expiration of defendant's listing. As the trial court noted, defendant ran the advertisement for his house for only three days, from August 1 through 3, even though the home had been unsold for months while listed prior to that time. We cannot say that the trial court's finding that the sale took place within the listing period was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

BARRY, P.J., and SLATER, J., concur.