RANDALL S. LOUIS *et al.*, Plaintiffs-Appellees, v. LEXINGTON DEVEL-
OPMENT CORPORATION, Defendant-Appellant.

First District (1st Division)   No. 1—92—0676

Opinion filed September 7, 1993.

Rudnick & Wolfe, of Chicago (Seymour Simon, Gerald B. Lurie, and
Earl J. Barnes II, of counsel), for appellant.

Law Offices of Baumgartner & Goldstein, of Chicago (A. Donald Baumgartner, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiffs Randall S. Louis and Frontier Realty Group, Ltd., sued defendant Lexington Development Corporation to recover a brokerage commission claimed to be due from defendant in connection with the purchase of a parcel of unimproved property located in suburban Cook County. After a bench trial, the circuit court entered judgment in favor of plaintiffs in the amount of $107,769.60. Defendant appeals the judgment, arguing that defendant was not liable to plaintiffs for a brokerage commission and that if it was, the circuit court's award of $107,796.60 is against the manifest weight of the evidence.

In February 1987, plaintiff Frontier signed a cooperative listing agreement with the owner/seller of property located on the northwest corner of Willow and Shermer Roads. The owner/seller was an Illinois land trust whose beneficiaries were two separate estates. The property consisted of 17.9 acres of unimproved real estate. The agreement limited plaintiffs' authority to sell the property to Northbrook Village, Inc., only, for a sale price of $4,329,986.90, which is $5.42 per square foot or on such other terms as defendant may agree. The agreement provided that defendant would pay plaintiffs a brokerage commission of 3% of the gross sales price. The agreement expired by its own terms on July 1, 1987. Plaintiffs did not consummate a sale of the property with Northbrook Village, Inc., by the expiration of the agreement. Plaintiff Louis testified that he did, however, continue to have seller's permission to sell the property.

In August 1987, plaintiff Louis read the following advertisement in the trade publication *Realty and Building*:

> "We are seeking zoned or unzoned land. No size limit to parcel. Broker protection is assured. Presentations by brokers must be in writing and include: survey, legal and common description, price/terms, local rules and ordinances, utility availability, etc."

Thereafter, plaintiff Louis met with defendant's director of forward planning, Richard Piggott. Plaintiff Louis asked Piggott what "broker protection is assured" meant in its advertisement. Piggott explained that defendant would protect a broker by not excluding him from the negotiations regarding property first presented to it by that broker, in order that the particular broker would receive the commission. Piggott further stated that he kept a file of submitted information from various brokers. Plaintiff Louis admitted at trial that during the nego-

tiations with defendant, he expected the seller to pay his commission if a sale was consummated. The only thing plaintiff Louis expected from defendant was that defendant would protect his commission for the sale of property first presented to defendant by him. After discussing what the above phrase meant, plaintiff Louis gave Piggott a copy of the expired listing agreement between plaintiff and seller, which included the provision for a commission of 3%. Plaintiff Louis then quoted Piggot a selling price of $4 million for the property.

On September 21, 1987, defendant's project development manager William Rotolo sent a letter of intent to purchase the property to plaintiffs. The letter proposed that defendant purchase the land at $4 per square foot, "including any real estate commission" and was contingent upon *inter alia*, annexation and zoning in the Village of Northbrook and a mutually agreeable timetable for purchase. Additionally, defendant authorized plaintiffs to offer a refundable $50,000 as earnest money.

Plaintiffs communicated defendant's letter of intent to seller's attorney Charles Master. Master authorized plaintiff Louis to make defendant a counteroffer of $3.8 million, which was $4.87 per square foot, subject to no contingencies, with an immediate closing and a nonrefundable $200,000 earnest money deposit. Defendant responded by authorizing plaintiff Louis to counteroffer sellers at $3.6 million, subject to the same contingencies set out in the letter of intent, with closing to take place in May 1988 and with a $50,000 refundable earnest money deposit. Sellers rejected this counteroffer and did not authorize another counteroffer.

In January 1988, real estate broker Roy Gottlieb telephoned defendant's president, Ronald Benach, a personal friend of Gottlieb's for at least 25 years, regarding sale of the property. Prior to telephoning Benach, Gottlieb had spoken to Jerry Schain, an attorney who represented one of the estates which beneficially owned the property. Schain was a friend of plaintiff Louis, whom Louis had kept advised of his dealings with the seller in regard to the property. During Gottlieb's telephone conversation with Benach, he was told that another broker had presented the property to defendant. Defendant, however, did not contact plaintiffs prior to authorizing Gottlieb to negotiate for the sale of the property. Further, Benach agreed to pay Gottlieb a commission if he could procure the property for defendant on terms acceptable to it, and signed an agreement on April 4, 1988, which provided that defendant would pay Gottlieb a 2½% commission of the gross sale price.

Initially, Benach authorized Gottlieb to offer the seller $4 per square foot, net, with closing to take place in six months. The "net" offer meant that defendant would pay any broker's commission. The offer was not subject to zoning or annexation contingencies because in February 1988, defendant had decided to annex the southwest corner of Willow and Shermer Roads to Glenview, instead of Northbrook, because Glenview had met defendant's annexation and zoning proposals with cooperation and quick processing. The above offer was not accepted. Then, on February 12, 1988, Gottlieb had authority to and did submit a written price offer of $4.25 per square foot to Schain and Leonard Schenfield, the representatives of the two estates which beneficially owned the property. This offer was also rejected. Negotiations continued until March 25, 1988, when defendant and seller signed a contract for the sale of the property at $4.60 per square foot, with a June 30, 1988, closing date. The contract also contained reciprocal warranties that neither defendant nor seller had dealt with any broker other than Gottlieb. The closing took place as scheduled and defendant paid Gottlieb the 2½% commission, $89,830.50. In turn, Gottlieb paid Schain a $9,000 referral fee.

Throughout the above negotiations, plaintiff Louis attempted to contact defendant regarding the sale of the property. After discovering that defendant had purchased the property and recognized only Gottlieb as a broker, plaintiff Louis telephoned defendant. Plaintiff Louis testified that when he finally spoke with Benach about remedying the commission situation, Benach replied, "Well, I'll see you in depositions."

Plaintiff Louis also testified that he was never told by the sellers to no longer attempt to sell the property. He was also never informed by defendant that his potential commission was no longer being protected even though he was continuing to discuss the possible purchase with defendant's project development manager Rotolo throughout the time of Gottlieb's negotiations.

Plaintiffs demanded payment of a commission from defendant. Defendant refused to pay, thereby prompting plaintiffs to file this lawsuit. After a bench trial, the circuit court found that there was a contract between plaintiffs and defendant by virtue of plaintiff's inquiry and response to defendant's advertisement and by defendant stating that brokerage commission protection would be assured. The circuit court specifically found that defendant breached that contract's implied provision of good faith and fair dealing by purposefully excluding plaintiffs from the sale negotiations in favor of Benach's friend, and then warranting to sellers that it had not used any broker other

than Gottlieb. The circuit court awarded plaintiffs $107,796.60, which was 3% of the gross purchase price. Defendant appeals both the judgment in plaintiffs' favor and the judgment amount.

The standard for reviewing a verdict is whether the circuit court's judgment was against the manifest weight of the evidence. (*Great West Steel Industries, Ltd. v. Northbrook Insurance Co.* (1985), 138 Ill. App. 3d 84, 484 N.E.2d 847.) A verdict is against the manifest weight of the evidence when an opposite conclusion is clearly evident and where the finding of the trier of fact appears unreasonably arbitrary and not based upon the evidence. (*Flynn v. Cohn* (1991), 220 Ill. App. 3d 393, 581 N.E.2d 30; *Goodrick v. Bassick Co.* (1978), 58 Ill. App. 3d 447, 374 N.E.2d 1262.) However, when several inferences of fact are reasonable from conflicting testimony, a reviewing court must accept those that support the trial court's judgment (*Fleming v. Fleming* (1980), 85 Ill. App. 3d 532, 406 N.E.2d 879) because the trier of fact weighs evidence and draws the ultimate conclusions as to those facts. *Whirlpool Corp. v. Bank of Naperville* (1981), 97 Ill. App. 3d 139, 421 N.E.2d 1078.

Defendant argues that the circuit court's finding that it was liable to plaintiff for a brokerage commission is against the manifest weight of the evidence. Initially, we must determine whether the circuit court's finding that a contract existed between defendant and plaintiff is against the manifest weight of the evidence.

■ The record contains evidence that defendant placed an advertisement in a trade paper soliciting certain types of properties and providing for brokerage protection. Plaintiffs approached defendant and discussed the meaning of "broker protection is assured." Plaintiffs were informed by defendant's representative that the phrase meant that once a property was presented to it for the first time, it would assure the broker that defendant would not exclude that broker from negotiations regarding the presented property in order to protect that broker's commission. The plaintiffs then presented defendant with several properties, including the property that is the subject of this appeal. Clearly, an agreement existed between the parties which provided that defendant would protect plaintiffs' brokerage commission for the sale of the property by virtue of not excluding plaintiffs from negotiations concerning the purchase of the property. We, therefore, hold that the circuit court's finding that a contract existed between the parties regarding the broker's commission for the sale of the property is not against the manifest weight of the evidence.

■ Next, defendant argues that plaintiffs were not the "procuring cause" of its purchase from seller and, therefore, plaintiffs are

not entitled to a commission. Plaintiffs argue that whether or not it was the procuring cause of the purchase is irrelevant. We agree with plaintiffs. After assuring plaintiffs protection of its commission, defendant contracted with Gottlieb as its broker to procure the purchase of the property first presented to defendant by plaintiffs. Throughout the time period that Gottlieb was negotiating the purchase, plaintiffs continued to pursue those same negotiations as the broker. In fact, plaintiff Louis had several telephone conversation with defendant's project development manager Rotolo regarding the status of defendant's purchasing position on the property. There is also testimony that defendant's president Benach deliberately excluded plaintiffs from the negotiations by refusing to accept or return plaintiff Louis' telephone calls and refusing to inform plaintiffs of anything regarding the attempt to purchase the property. Therefore, even if plaintiffs were not the procuring cause, it was because defendant's representatives prevented plaintiffs from ultimately being such by their intentional exclusion of plaintiffs from the negotiations. Therefore, the issue of whether plaintiffs were the procuring cause of the sale is irrelevant, and the relevant issue is whether defendant breached its agreement with plaintiffs by failing to protect plaintiffs' commission.

The record contains testimony that Piggott represented to plaintiffs that once a property was presented to defendant, it would not take any actions to preclude the broker from the negotiations regarding that property. Clearly, defendant's hiring of Gottlieb as its broker and negotiating through him while ignoring plaintiffs' inquiries regarding the property are in breach of the agreement between plaintiffs and defendant.

The circuit court found that defendant breached the contract by failing to act in good faith. (See *Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.) Every contract in Illinois has an implied provision of good faith and fair dealing. (*Honkomp v. Dixon* (1981), 97 Ill. App. 3d 476, 422 N.E.2d 949.) We hold that it was not against the manifest weight of the evidence for the circuit court to find that defendant breached the contract by failing to include plaintiffs in negotiating the purchase of the property, and thereby failing to protect plaintiffs' commission. Thus, the circuit court's finding that the defendant is liable to plaintiffs for the lost commission is upheld.

■ Lastly, defendant argues that the judgment amount is against the manifest weight of the evidence. The circuit court awarded plaintiffs a commission of 3% of the purchase price of the property. There is evidence in the record that Gottlieb's commission was 2½%. How-

ever, there is also evidence that defendant received the expired exclusive listing agreement between plaintiffs and seller which indicated a 3% commission. Moreover, in the past, the Illinois Appellate Court has upheld a jury verdict award of a 5% brokerage commission. (See *Romanek-Golub & Co. v. Anvan Hotel Corp.* (1988), 168 Ill. App. 3d 1031, 522 N.E.2d 1341.) A reviewing court should not interfere with the trial court's award of damages either when the evidence is conflicting or when there is evidence in support of the verdict and there is not an indication that the award was the result of passion or prejudice. (*Landolt v. Stratmann* (1967), 87 Ill. App. 2d 81, 230 N.E.2d 498.) Since there is evidence to support the award and there is no indication that it was the result of passion or prejudice, we affirm the circuit court's award to plaintiffs in the amount of $107,769.60.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.