JOANNE GRETENCORD, Plaintiff-Appellee, v. DANA CRYDER, Defendant-Appellant.

Third District    No. 3—02—0109

Opinion filed January 29, 2003.

Scott M. Hoster, of Davis, Dystrup, Hoster, Osterberger & Jarot, P.C., of Joliet, for appellant.

James R. Brumund, of Brumund & Jacobs, of Joliet, for appellee.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Joanne Gretencord, a real estate broker, sued defendant Dana Cryder to recover a 6% brokerage commission on the sale of defendant's farm property. After a bench trial, the circuit court found in plaintiff's favor and entered judgment against defendant in the amount of $41,900. Defendant appeals, arguing that the court's decision was contrary to the manifest weight of the evidence. We reduce the amount of the judgment to $41,490 and affirm the trial court's decision in all other respects.

## FACTS

The real estate here at issue consisted of an undivided one-half interest in a 320-acre tract of agricultural land in Kendall County (Cryder Farm). Defendant inherited his interest upon the death of his father in 1993. The other undivided one-half interest was owned by defendant's aunt, Mary Moss. Kirk Friestad was the tenant farmer of Cryder Farm at all times relevant to this action.

In 1996, defendant needed money. He tried to obtain a bank loan, but he was told that his undivided one-half interest in the farm could not be used as collateral. The prospect of defendant's selling his interest in the farm upset Moss. Consequently, Moss's attorneys instructed defendant not to contact her about the matter. Defendant honored his aunt's request and asked his attorney, Timothy Malmquist, to do so as well. Prior to July 3, 1996, defendant told Friestad that he was considering listing the property for sale. Friestad said he wished he could buy it, but he did not think he could afford such a large tract.

On July 3, defendant entered into an agreement with plaintiff granting her the exclusive right for three months to sell his undivided one-half interest in the farm. The agreement specified the marketing price as $691,500 and named Richard Olson as plaintiff's designated agent. The agreement further provided:

"Section 2. *Commission*

If during the term of this Agreement, *** the property is sold or exchanged at any price and upon any terms which Seller accepts, Seller shall pay Broker a commission of 6% of the total purchase price of the sale or exchange. Seller agrees that such a commission shall be paid if the property is sold or exchanged by Seller within a protection period of 3 months following the term of this agreement *** to anyone to whom Broker has made aware of the property and of whom Seller has received notice from Broker within 30 days of the expiration of the three month period."

And

"Section 4. *Sellers Duties*

Seller agrees to immediately refer to the Designated Seller's Agent all prospective purchasers or brokers who contact Seller for any reason and to provide the Designated Sellers [*sic*] Agent with their names and addresses."

During the period that the agreement was in effect, Olson obtained a written offer from William Eisenbrandt to purchase the entire Cryder Farm for $1,384,000. The offer was accepted by defendant, but it was contingent on Moss's execution of the sales contract. Malmquist and Olson communicated the offer to Moss through her attorneys. Malmquist forwarded copies of the listing agreement and Eisenbrandt's offer to Moss's attorneys. Around this time, Friestad approached Eisenbrandt. Friestad said he thought Eisenbrandt had purchased the farm, and he was concerned about who would be farming it. Eisenbrandt told Friestad that the sale was not complete, and he could not comment on a farm tenancy arrangement. After Eisenbrandt related this visit to Olson, Olson telephoned Malmquist to inquire about Friestad's interest in purchasing the property. Malmquist assured Olson that Friestad was not an interested buyer.

Olson subsequently visited with Friestad in person in August 1996. Friestad told Olson that he wanted to purchase the farm, but he could not afford to buy defendant's share of it. Consequently, Olson did not further pursue Friestad as a prospective purchaser.

In the meantime, Moss refused to sell, and Eisenbrandt proposed purchasing defendant's share of the farm if Moss would agree to a partition. Moss's attorneys did not respond to Olson and Malmquist regarding a partition before the listing agreement expired at midnight, October 2.

On October 3 and 4, defendant contacted Malmquist about selling his interest in the farm to Friestad and filing a partition suit against Moss. Malmquist indicated that if Olson had not shown the farm to Friestad, defendant had no liability under the listing agreement. On October 7, Friestad came to Malmquist with a written offer to purchase defendant's undivided one-half interest in the farm for $4,000 per surveyed acre. On that date, he tendered $10,000 in earnest money to defendant and agreed to pay an additional $40,000 when the contract was signed. On October 8, 1996, the First Midwest Bank approved Friestad's request for a $640,000 loan to purchase 160 acres of Cryder Farm. Negotiations between defendant and Friestad resulted in a contract executed on October 11, 1996, for the sale of defendant's undivided one-half interest for $652,500. The transaction was closed on February 3, 1997.

At trial, defendant testified that, while the agreement was in ef-

fect, he told Friestad he had a 90-day listing agreement. Friestad admitted that he was aware as early as July 1996 that defendant had listed his interest in the farm with plaintiff, but he said he could not recall if he knew the date the listing agreement expired. He said he had had discussions with Moss prior to October 7, 1996, and that she had agreed to partition the farm if Friestad were to purchase defendant's share. Friestad admitted that his loan would not have been approved without Moss's prior agreement to a partition. Friestad thought the partition documents were executed in March 1997, or some time after the closing on defendant's interest. Both defendant and Malmquist admitted that, although they discussed defendant's property with Friestad at various times during the period of the listing agreement, they did not refer him to Olson as a prospective purchaser or provide his name and address to Olson.

Based on the evidence, the trial court found that Friestad contacted defendant about the property either directly or through his attorney after Olson visited with Friestad in person, and that Friestad dealt directly with Moss behind defendant's back. The court found that Friestad carefully waited until he knew the listing agreement had expired before he made his written offer to purchase at a price practically equal to the listing price, less 6%, thereby saving himself the cost of plaintiff's commission. Although the court found no purposeful dishonesty on defendant's part, the court ruled that, under the circumstances, defendant owed a duty to refer Friestad to Olson as a prospective buyer pursuant to the listing agreement and that defendant's failure to do so constituted a breach of contract. Accordingly, the court entered judgment for plaintiff.

## ISSUE AND ANALYSIS

On appeal, defendant argues that the trial court erroneously found that he owed a duty under the listing agreement to refer Friestad to Olson. He does not dispute that he discussed the property with Friestad during the listing period after Olson met with Friestad in August 1996. Rather, he claims only that he did not know that Friestad was a prospective purchaser until after the listing agreement expired. He argues that the $41,900 judgment is unfair; he should not be punished for Friestad's conduct, especially since he did not receive any more money from the sale than he would have received if the property had been sold to Eisenbrandt.

■ A circuit court's verdict will not be disturbed on review unless it was against the manifest weight of the evidence. *Louis v. Lexington Development Corp.*, 253 Ill. App. 3d 73, 625 N.E.2d 289 (1993). A verdict is against the manifest weight of the evidence when an op-

posite conclusion is clearly evident and where the court's finding of fact is arbitrary and not based on the evidence. *Louis*, 253 Ill. App. 3d 73, 625 N.E.2d 289. Generally, this court will defer to the court's findings of fact where several inferences are reasonable from conflicting testimony and where the facts must be determined based on an assessment of the witnesses' credibility. *Louis*, 253 Ill. App. 3d 73, 625 N.E.2d 289; *Family Tailored Homes, Inc. v. Manfield*, 233 Ill. App. 3d 477, 599 N.E.2d 198 (1992).

■ Here, the question at trial was not whether defendant knew or believed that Friestad was a prospective purchaser, but whether he was, in fact, a prospective purchaser who contacted defendant about the property during the term of the listing agreement. "Prospective" means "[i]n the future; looking forward; contemplating the future." Black's Law Dictionary 1222 (6th ed. 1990). Undisputed facts and reasonable inferences from the evidence at trial established that Friestad, notwithstanding his denials of ability to pay, was a "prospective" purchaser—*i.e.*, contemplating the future purchase of defendant's property—who contacted defendant throughout the term of the listing agreement. Defendant informed Friestad that he intended to sell his interest in the farm even before he entered into the listing agreement. At that point, Friestad said he wanted to buy the property but could not afford it. Later, in another conversation, defendant informed Friestad that he had a 90-day listing agreement with plaintiff. This information was not a matter of general publication. It would be of interest, however, to a prospective purchaser who was willing to wait in the wings to make a deal for 6% less than the listed price. See *Podolsky & Associates, L.P. v. Discipio*, 297 Ill. App. 3d 1014, 697 N.E.2d 840 (1998).

Defendant's duty to refer was not dependent on defendant's belief that Friestad could afford to pay for the property and was not extinguished by Olson's failure to show Friestad the land he had been farming for several years. See *Family Tailored Homes*, 233 Ill. App. 3d 477, 599 N.E.2d 198 (real estate agent's failure to show property to ultimate buyer who lived 50 yards away and was known to seller did not absolve seller of liability under exclusive listing agreement, where offer to purchase was made within two days of expiration of listing agreement). Instead of relying on Friestad's asserted inability to pay the listed price, defendant had only to refer Friestad to Olson and to provide Olson with Friestad's name and address pursuant to section 4 of the listing agreement. Defendant did neither. By not complying with his contractual duty, defendant assumed the risk that Friestad would deal with Moss behind his back, arrange his finances and make an offer defendant would not refuse immediately after the listing agreement expired.

Notwithstanding defendant's lack of bad faith, his failure to comply with his duty to refer exposed him to liability under the contract. *Cf. Podolsky*, 297 Ill. App. 3d 1014, 697 N.E.2d 840 (broker not entitled to commission where trial court believed seller's testimony that he told prospective purchaser to deal with broker during term of listing agreement and sold property to same entity more than six months after listing agreement expired). Accordingly, the trial court did not err in granting judgment for plaintiff.

Last, we note that the judgment awarded is $410 in excess of the amount prayed for in plaintiff's complaint. Plaintiff sued for $41,490, which is 6% of the listed price of $691,500. No evidence was admitted at trial to support an award greater than $41,490, and it appears that the amount awarded ($41,900 plus costs) was a scrivener's error. Therefore, pursuant to our powers under Supreme Court Rule 366(a) (155 Ill. 2d R. 366(a)), we modify the award by reducing it to $41,490 plus costs. See *Carlson v. City Construction Co.*, 239 Ill. App. 3d 211, 606 N.E.2d 400 (1992).

## CONCLUSION

The judgment of the circuit court of Grundy County is affirmed as modified.

Affirmed as modified.

McDADE, P.J., and SLATER, J., concur.