# Illinois Official Reports

## Appellate Court

---

### *Halpern v. Titan Commercial LLC*, 2016 IL App (1st) 152129

---

| | |
|---|---|
| Appellate Court Caption | CHARNA HALPERN, Plaintiff-Appellant and Counterdefendant-Appellant, v. TITAN COMMERCIAL LLC and BEN ROSENFIELD, Defendants-Appellees and Counterplaintiffs-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-15-2129 |
| Filed | November 7, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-17139; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Kevin Q. Butler, Cornelius E. McKnight, Bryan T. Butcher, and Nathan P. Karlsgodt, of McKnight, Kitzinger & Pravdic LLC, of Chicago, for appellant.<br><br>Tyler Manic, of Schain, Banks, Kenny & Schwartz, Ltd., of Chicago, for appellees. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion.<br>Justices Harris and Mikva concurred in the judgment and opinion. |

**OPINION**

¶ 1     This case arises out of a dispute over a real estate broker's commission. Defendants Titan Commercial LLC (Titan) and its principal Ben Rosenfield filed a broker's lien against a property. Plaintiff Charna Halpern filed a complaint to extinguish the lien as improper. In turn, defendants filed a counterclaim seeking payment of their real estate broker's commission. Following a bench trial, the trial court awarded defendants a $50,000 commission and denied plaintiff's claim for attorney fees. We affirm.

¶ 2                                    BACKGROUND

¶ 3     Plaintiff is the owner of iO Theatre, a comedy club that she leased near Wrigley Field for nearly 25 years. Plaintiff was looking to purchase a building to continue to operate her club at a different location. In May 2010, plaintiff began working with defendants who specialize in off-market properties. An off-market property, also known as a pocket listing, is a property not marketed to the public for sale, but known to the broker based on the broker's preexisting relationship with the owner or landlord. Generally, when dealing with an off-market property, the broker approaches the building owner, explores the owner's inclination to sell, and builds up a relationship that leads up to the owner's willingness to sell the property. Other brokers do not know about the availability of these properties. Defendants informed plaintiff about the confidential nature of an off-market property and how they would be the only broker involved in the transaction.

¶ 4     Defendants showed plaintiff a number of properties. On June 22, 2010, defendants showed plaintiff an off-market property at 1501 N. Kingsbury (Kingsbury property) in Chicago. Defendants had several meetings with the owner of the Kingsbury property a few months prior to speaking with plaintiff about it. At the end of the showing, plaintiff and the owner of the Kingsbury property discussed a potential transaction and a selling price. The owner requested that plaintiff submit an offer to him.

¶ 5     Following the showing, defendants assisted plaintiff to find a parking solution in the event that she would purchase the Kingsbury property. Defendants arranged another showing on June 25, 2010, where plaintiff's architect toured the property to evaluate the costs of converting the building into a theater. Defendants also obtained the full set of plans for the building on the property, information about the existing leases, and researched whether the zoning was appropriate for her comedy club. These efforts allowed plaintiff and her architect to determine that the Kingsbury property was financially feasible for plaintiff's needs.

¶ 6     On July 15, 2010, plaintiff, through Titan, submitted a letter of intent containing plaintiff's offer of $1.7 million to purchase the Kingsbury property. The letter stated that Titan would receive a commission and that the seller would be responsible for the payment of it to Titan. In the beginning of October 2010, plaintiff increased the offer to $2.8 million. Plaintiff intended to purchase the property vacant without the tenants. Rosenfield advised plaintiff that if she wanted the property vacant, based on his conversations with the owner, she could not purchase the property until the middle of 2012.

¶ 7     After submitting the offer, plaintiff instructed defendants to maintain contact with the owner and to make sure that no one else would buy the property. From 2010 to 2012, defendants stayed in contact with the owner of the Kingsbury property and showed him several

properties the owner could potentially purchase with the proceeds from his sale of the Kingsbury property to plaintiff. In December 2010, plaintiff assured Rosenfield in an e-mail that she understood that the Kingsbury property was Titan's deal and no other broker's.

¶ 8     Plaintiff looked at various properties using other brokers, but she continued to maintain her interest in purchasing the Kingsbury property. Throughout 2012, she continued to negotiate the purchase of the Kingsbury property with the assistance of Justin Cozart, an employee of the Private Bank. In an e-mail from May 2012, he advised her, "[p]lease try to keep this quiet until we have our deal signed and done. This is a valuable property that we have been waiting out for over a year to get."

¶ 9     In November 2012, plaintiff entered into a contract to purchase the Kingsbury property for $4.2 million and subsequently closed on the property. No real estate broker commission was paid, but a consulting fee of $100,000 was paid to Justin Cozart's company. No commission was paid to Rosenfield or Titan.

¶ 10    Titan filed a commercial broker's lien on the Kingsbury property. On July 18, 2013, plaintiff filed suit against Titan and Rosenfield seeking a temporary restraining order, a preliminary injunction, declaratory relief, an action to quiet title, adjudication of the lien, damages for tortious interference, and damages and attorney fees for violating the Commercial Broker's Lien Act (Act) (770 ILCS 15/1 *et seq.* (West 2012)). The chancery court granted plaintiff the preliminary injunction. The case was then transferred to the law division.

¶ 11    Defendants counterclaimed and sought to recover their lost broker's commission alleging breach of contract, promissory estoppel, and *quantum meruit*. Following a bench trial, the trial court denied plaintiff's claim for attorney fees and granted defendants a judgment of $50,000 on their *quantum meruit* claim. This appeal follows.

¶ 12                                    ANALYSIS

¶ 13    On appeal, plaintiff argues that the trial court erred when it denied her request for attorney fees and costs associated with pursuing the preliminary injunction action against defendants. Plaintiff argues the trial court erroneously denied her request because she was the prevailing party in her action to remove an improperly asserted lien on the property. We review the award of attorney fees under a *de novo* standard of review. *People v. Blanks*, 361 Ill. App. 3d 400, 407 (2005) (matters of statutory interpretation are reviewed *de novo*).

¶ 14    Section 10(*l*) of the Act provides that the prevailing party is entitled to recover the "cost of proceedings asserting or defending a broker's claim of lien, including reasonable attorneys' fees, costs, and prejudgment interests." 770 ILCS 15/10(*l*) (West 2012). A party is a "prevailing party" for the purposes of awarding attorney fees when a judgment is entered in his favor and he achieves some sort of permanent affirmative relief after adjudication on the merits. See *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 282 (2001).

¶ 15    Here, plaintiff cannot be considered a prevailing party by merely the grant of an interlocutory motion for a preliminary injunction. The court's grant of the injunction was just a preliminary stage, was not a final disposition on the merits of plaintiff's claim asserting an improper lien, and did not confer plaintiff a permanent relief. See *People ex rel. Hartigan v. National Anti-Drug Coalition*, 124 Ill. App. 3d 269, 273 (1984) ("Such an injunction does not decide controverted facts or the merits of the cause; rather it only shows that sufficient cause has been made to authorize or require the court to preserve the rights in issue until a final

hearing on the merits."). In granting plaintiff's preliminary injunction, the chancery court specifically stated that it was not deciding the merits of the plaintiff's claim against the defendants. The court emphasized that it was only making a determination on the likelihood of success on the merits for the purposes of the preliminary injunction and suggested that defendants would not be successful in an action to enforce the lien. The propriety of the lien was never adjudicated on the merits.

¶ 16    Moreover, the Act, which is the statute relied on by the plaintiff here, does require that, in order to recover fees, plaintiff must be the "prevailing party" in a proceeding "asserting or defending a broker's claim of lien." The preliminary injunction was not a final adjudication on the merits as to the propriety of the lien, and plaintiff cannot be viewed as the prevailing party. Therefore, the trial court did not err in denying plaintiff's request for attorney fees and costs.

¶ 17    Plaintiff next argues that the trial court's determinations that defendants were entitled to a broker's commission under a *quantum meruit* theory and that defendants were the procuring cause for the sale of the Kingsbury property were against the manifest weight of the evidence. Plaintiff contends that defendants did not negotiate the final sale of the Kingsbury property and were not the procuring cause of sale. Instead, plaintiff maintains, a different real estate professional actually negotiated the purchase of the property more than two years after plaintiff had made her initial offer to buy the property. We review the trial court's factual findings under a manifest weight of the evidence standard. *Lozman v. Putnam*, 379 Ill. App. 3d 807, 820 (2008). A finding is against the manifest weight of the evidence "only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." (Internal quotation marks omitted.) *Id.*

¶ 18    A broker's right to commission depends on whether the sale was procured through his efforts or through information derived from him, and cannot be defeated by the owner's making the sale through another broker. *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 485 (1980); *Van C. Argiris & Co. v. FMC Corp.*, 144 Ill. App. 3d 750, 754 (1986) (whether the complaining broker is the procuring cause of the sale "is a logical *sine qua non* to the establishment of the fact that the services rendered were valuable and of benefit to the seller, and thus, it is merely a part of the existing elements required for recovery in *quantum meruit*"). A real estate broker may be the procuring cause of a sale "if he brings together the parties who ultimately consummate the transaction [citation] or if he is instrumental in its consummation [citations]" or "on the basis of the negotiations he conducts, even though he does not take part in bringing the parties together initially. [Citation.] Moreover, a real estate broker may be the procuring cause where the transaction is effectuated through information which he disseminates [citations], although it has been noted that in such cases, the broker actually may do more than supply information [citation]." *Pietka v. Chelco Corp.*, 107 Ill. App. 3d 544, 549-50 (1982).

¶ 19    In light of the above principles and of the record before us, we find that the trial court's holding that defendants were the procuring cause of the Kingsbury property was not against the manifest weight of the evidence. The Kingsbury property was never publicly marketed for sale but was an off-market property known to plaintiff because defendants showed her the property and introduced her to its owner. Clearly, the only means to plaintiff purchasing the property was through the defendants' discovery of the property as a potential deal for plaintiff. Furthermore, not only did Titan facilitate several meetings between the owner and plaintiff, but it also conducted its due diligence when it procured information regarding the leases on the

- 4 -

property, the zoning, the parking situation, and a full set of plans for the property to allow plaintiff's architect to estimate the cost of converting the building on the property into a new comedy club.

¶ 20    In 2010, plaintiff, through Titan, submitted an offer to purchase the property. Titan also advised plaintiff that if she wanted the property vacant, without the tenants, she could not purchase the property until the middle of 2012. After submitting her offer, plaintiff never requested defendants to stop working on the purchase of the Kingsbury property. Rather she instructed them to maintain contact with the owner to make sure no one else would buy the property. She also assured Rosenfield in an e-mail that the Kingsbury property would be "absolutely [his] deal." From 2010 to 2012, defendants stayed in contact with the owner of the Kingsbury property and showed him properties he could purchase with the sale proceeds from his sale of the Kingsbury property to plaintiff. Although plaintiff stopped working with Titan and purchased the Kingsbury property with the assistance of another real estate professional, not a broker, plaintiff admitted that she would have never known about the property had Titan not shown it to her. Based on this record, we cannot say that the trial court's finding that Titan was the procuring cause of the sale was against the manifest weight of the evidence. See *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 1052 (1998) ("Where a real estate broker shows that he has been instrumental in bringing parties together and the transaction is consummated, he is to be regarded as the procuring cause of the sale and entitled to his commission. [Citation.] It is sufficient if the sale is effectuated through the efforts of the broker or through information [provided by] him." (Internal quotation marks omitted.)).

¶ 21    Contrary to plaintiff's argument, defendants did not abandon the deal. If the purchaser claims that the broker abandoned the deal, "the evidence must show not only a discontinuance of his efforts by the broker, it must show abandonment by the purchaser of all intention to buy the property." *Western Pride Builders, Inc. v. Zicha*, 23 Ill. App. 3d 770, 773 (1974). Certainly, plaintiff never abandoned her intention to buy the Kingsbury property. In May 2012, Cozart and plaintiff discussed how to keep their new offer to purchase the property "quiet" because it "is a valuable property that we have been waiting out for over a year to get." Moreover, there was no evidence in the record that shows that defendants ever refused to perform any brokerage activity to effectuate plaintiff's purchase of the property. Instead, Rosenfield made regular calls to the owner of the Kingsbury property to stay updated and offered to lend any assistance to close the deal. After discovering plaintiff's 2012 offer made through Cozart, Rosenfield reiterated to plaintiff that Titan was owed a commission if plaintiff purchased the Kingsbury property.

¶ 22    Ultimately, plaintiff bought the Kingsbury property. Despite being an off-market property where the purchaser and the seller did not know one another, there was no real estate broker commission paid. Plaintiff signed the contract stipulating that she did not work with any broker and warranted that only Cozart is owed a commission in the form of a "finder's fee," although without defendants' efforts she would not have been able to purchase the property. Under these circumstances, the trial court correctly held that defendants were entitled to their commission. A broker who is the procuring cause of a sale is entitled to a commission under the theory of *quantum meruit* where a party receives a benefit which is unjust for him to retain without paying for it. *Romanek-Golub & Co. v. Anvan Hotel Corp.*, 168 Ill. App. 3d 1031, 1042-43 (1988). If a buyer excludes a broker from a transaction, the buyer may become liable to pay the

- 5 -

broker's commission even in the absence of an express agreement. *Louis v. Lexington Development Corp.*, 253 Ill. App. 3d 73, 78 (1993).

¶ 23 In the instant case, defendants performed real estate broker services, which benefitted plaintiff. Plaintiff's benefit consisted of the ability to purchase the Kingsbury property, which derived from defendants' efforts. Defendants could not be deprived of their commission merely because plaintiff completed the sale without the direct involvement of defendants, who brought the parties together and without whom plaintiff admittedly would have never known about the existence of the property. See *Bennett & Kahnweiler Associates v. Ratner*, 133 Ill. App. 3d 316 (1985). The trial court properly held that it would be unfair for plaintiff to keep that benefit without compensating defendants who created that opportunity.

¶ 24 Finally, we reject plaintiff's argument that defendants failed to establish the reasonable value of their services to recover under *quantum meruit*. Plaintiff argues that the award was "contrary to the law and speculative." At trial, two experts testified that a reasonable and customary commission paid to a real estate broker for brokering the Kingsbury property would range between 1% and 6% of the sale price. Plaintiff did not produce any counterevidence suggesting that this range of commissions was erroneous. Plaintiff paid a $100,000 "finder's fee" to another real estate professional and did not pay any broker's fee. The $50,000 commission representing 1.19% of the sale price is a reasonable commission in light of the unchallenged expert testimony that 6% of the sale price would have been reasonable. Accordingly, we are unable to conclude that the judgment in favor of defendants on their *quantum meruit* claim was excessive or against the manifest weight of the evidence.

¶ 25 CONCLUSION

¶ 26 Based on the foregoing, we affirm.

¶ 27 Affirmed.